LABORDE, Judge.
Plaintiffs, Vernon McClinton and his wife Grade, sued Herbert W. Reid d/b/a Reid’s Fire Equipment Co., and Casco Products Company[1] seeking recovery of damages sustained to plaintiffs’ restaurant when an automatic fire extinguisher system allegedly malfunctioned. The system was sold, installed and maintained by Reid and was manufactured by Casco. The McClinton’s fire insurer, Travelers Insurance Company, intervened to recover the amounts it paid for fire loss pursuant to its policy. The defendants, Reid and Casco, asserted various third party demands against each other.
Mode of trial was by jury. At the close of plaintiffs’ and intervenor’s case, the trial judge granted Reid’s motion for a directed verdict and ordered the principal demand dismissed against him. Casco proceeded with its third party demand against Reid. At the close of Casco’s presentation, the trial judge granted Reid’s motion for a directed verdict and ordered dismissal of the third party demand against him. The trial continued on the principal demand without Reid, leaving only Casco as defendant. At the trial’s conclusion, the jury returned a verdict in Casco’s favor. The McClinton’s and Travelers joined in a motion for a new trial which was denied. This appeal, involving all parties, followed.
The principal issues on appeal are whether the trial judge erred in granting either or both directed verdicts in Reid’s favor and if so, what portions of the case must be remanded for new trial. We hold that the trial court erred in granting the directed verdicts. We reverse and remand the entire case for new trial.
MOTION TO DISMISS THE APPEAL
Reid’s motion to dismiss the appeal is denied.
Casco appealed the dismissal of its third party demand against Reid. Reid moved to dismiss Casco’s appeal urging that it was untimely.
Article 2087 of the Louisiana Code of Civil Procedure sets forth the delays for taking a devolutive appeal. The last paragraph of the article provides:
“When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised or reversed as to any party may take a devolutive appeal therefrom within the delays allowed in the first Paragraph of this Article or within ten days of the mailing by the clerk of the notice of the first devolutive appeal in the case, whichever is later.” (Emphasis ours)
A chronological development of the facts shows that Casco’s appeal was timely. On November 7, 1979, Reid moved for a directed verdict seeking dismissal of Casco’s third party demand against him. On November 14, 1979, the trial judge granted Reid’s motion for a directed verdict. In the meantime, the principal action involving the McClinton’s and Casco continued and on November 9, 1979, judgment was rendered in Casco’s favor in the principal action. On January 7, 1980, the McClintons and Travelers filed a devolutive appeal from the judgment against them involving the principal demand. Although the motion for this appeal was filed on January 7, 1980, more importantly for our purposes, the Natchi-toches Parish Clerk of Court did not mail notice of this appeal until January 25, 1980. On February 4, 1980, Casco filed its motion for devolutive appeal seeking reversal of the directed verdict dismissing its third party demand against Reid. Thus, Casco’s appeal is timely as it was filed within 10 days of the mailing of the notice of the first devolutive appeal in the case. For these reasons, Reid’s motion to dismiss Casco’s appeal is denied.
*509 THE MERITS
As mentioned above, the primary issues on appeal involve the propriety of the trial judge’s granting directed verdicts in Reid’s favor and dismissing both the principal and. third party demands against him. The applicable standard in granting a motion for a directed verdict was announced and adopted by our Court in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979). That standard is:
“On motion for directed verdict ... the Court should consider all of the evidence-not just that evidence which supports the nonmover’s case-but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury.”
With this standard in mind, we must now consider whether the results reached by the trial judge were correct. We consider first the directed verdict granted on the principal demand, then the directed verdict granted on the third party demand.
At the close of the McCIintons’ and Travelers’ case, the trial judge dismissed the principal demand against Reid after granting his motion for a directed verdict. The record in this case, viewed in the light most favorable to the McCIintons and to Travelers, reflects the following. In order to maintain insurance coverage on their restaurant, the McCIintons purchased a fire extinguisher system from Reid. This system is designed to work automatically in the following manner. The fire extinguishing material is a dry powder similar to baking soda. This powder is stored in a cannister which is highly pressurized with gas. Pipes lead from the pressurized can-nister to nozzles located directly above the fire hazardous area the system is installed to protect. Also located in this area is a fusible link which melts when subjected to high temperatures. The melting of this fusible link triggers the release of the gas in the cannister which, due to the high pressurization, forces the extinguishing powder from the cannister, through the pipes, out of the nozzles, and directly onto the fire. There is no shut-off valve, so once the system is activated, it continues to spray the powder until it empties itself. The system is designed for reuse however; and requires only that it be reserviced, refilled, repressurized and recharged for the next use.
Reid, along with selling this system to the McCIintons, also installed it in their restaurant, positioning the nozzles in the kitchen directly over the deep fat fryers. In addition, Reid entered a maintenance contract with the McCIintons wherein he obligated himself to service the system and to perform semi-annual inspections of it in order to make sure it was in proper working condition.
In April of 1975, a fire occurred in the McCIintons’ restaurant, the Bayou Jacko. The fire extinguisher system automatically activated emptying its powder throughout the kitchen. Reid, pursuant to his maintenance agreement, removed the cylinder and control heads, (which included the pressure valve) brought them to his shop, disassembled the control head completely, cleaned it, put it back together, put the control head back in the cylinder, refilled it with dry powder, repressurized it, recharged it and reinstalled it in the kitchen above the deep fat fryers. Thereafter, Reid continued making semi-annual inspections of the system. These inspections consisted of changing the fusible link, cleaning the nozzles, blowing out the supply lines, checking the pressure gauge, and checking the system in general. Reid’s last semi-annual inspection was on April 17, 1977, less than a month before the fire which gave rise to the instant case.
*510 On May 10, 1977, a second fire occurred in the Bayou Jacko Restaurant. This time the fire extinguisher system apparently malfunctioned and extensive damage occurred before the fire was extinguished by members of the Natchitoches Fire Department.
At the trial, McClinton and his employees testified that the fire originated in a deep fat fryer and spread when the fire extinguisher system failed to activate, either automatically or manually. Other evidence brought out by the McClintons and Travelers supports this. For example, Travelers hired J.L. Gilmore to investigate the origin of the fire and to conduct tests on the fire extinguisher system to discern why it failed to activate. Mr. Gilmore conducted a four-hour examination at the scene of the fire. He also boxed up the fire extinguisher system and sent it to his office for further testing. At the trial, Travelers called Mr. Gilmore as its expert witness. Mr. Gilmore testified that the fire appeared to have originated in a deep fat fryer. Finding no evidence of dry powder throughout the kitchen, Mr. Gilmore concluded that the fire extinguisher system failed to activate. After examining the system both intact in the restaurant and disassembled in his office, Mr. Gilmore concluded that the reason the system failed to activate was because the cannister lacked proper pressurization. Without the proper pressure, Mr. Gilmore explained that there was nothing to force the powder out of the cannister, through the pipes, out of the nozzles and onto the fire raging in the deep fat fryer. When questioned further, Mr. Gilmore stated that the rest of the system operated as it was intended to and that the only reason the system failed to activate was because it lacked proper pressurization. Due to the condition of the equipment, Mr. Gilmore admitted that he was unable to determine with certainty whether the cannister lacked pressure prior to the fire or whether the pressure instead leaked out during the fire, but in his opinion, he felt that there was no pressure in the cannister before the fire occurred. (Tr. 438)
. Counsel for the McClintons and Travelers questioned Reid under cross examination. Reid testified that maintenance of the system was his responsibility totally and if the system was discharged or used, it was also his responsibility to get it back in working condition. Other evidence brought out by the McClintons and Travelers showed that exclusive control of the workings of the system was left to Reid. Both the McClin-tons and their employees testified that no one, other than Reid or his employees, tampered with or had reason to tamper with the extinguisher system.
After a thorough review of all the evidence submitted by the McClintons and Travelers, conducted in the light most favorable to them and drawing all reasonable inferences in their favor, we conclude that a reasonable and fair-minded person could return a verdict in their favor and against Reid. For these reasons, we hold the trial judge erred in granting Reid’s motion for a directed verdict and dismissing the principal demand against him.
Application of the above standard also indicates error in the trial judge’s grant of a directed verdict in Reid’s favor concerning the third party demand urged by Casco. In that demand, Casco sought judgment against Reid for any amount it may be cast to pay alleging negligence of Reid in installing and maintaining the system. At the same time, Casco disclaimed any acts of negligence on its part.
A thorough review of Casco’s evidence, conducted in the light most favorable to Casco, reflects the following. Casco manufactured the system and is liable, as manufacturer, for any defects in design or manufacture. At the trial Reid testified that in installing and maintaining the system, he observed no defects. Similar testimony was given by Travelers’ expert witness, J.L. Gilmore, who examined and tested the system after the fire. Mr. Gilmore testified that he found no defects in the system’s manufacture or design. Instead, the only reason the fire extinguisher system malfunctioned was because it lacked proper pressurization.
*511 Other testimony established that Casco was not responsible for maintaining or inspecting the system. Instead, these were Reid’s duties and these duties encompassed pressurization of the system. Other evidence showed that the system functioned properly during the fire in 1975, that shortly thereafter Reid repressurized the system, and that since then Reid inspected the system semi-annually which included a check of the pressure gauge.
After a thorough review of all the evidence submitted by Casco, in the light most favorable to them and drawing all reasonable inferences in their favor, we conclude that a reasonable and fair-minded person could return a verdict in favor of Casco and against Reid. Therefore, we hold the trial judge erred in granting Reid’s motion for a directed verdict dismissing Casco’s third party demand against him.
The trial judge granted Reid’s motion for a directed verdict on the principal demand at the close of McClintons’ and Travelers’ case. Likewise, he granted Reid’s motion for a directed verdict on the third party demand at the close of Casco’s case. Due to the trial judge’s rulings, Reid was never required to put on any evidence.
We are mindful of the recent expression of our Supreme Court in Ragas v. Argonaut Southwest Insurance Co. et al., 388 So.2d 707 (La.1980). In the Ragas case the court stated:
“Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.” (Emphasis ours)
In Ragas the directed verdict was granted at the close of all the evidence. Our case is distinguishable. Since the trial judge’s rulings precluded the introduction of any evidence by Reid, the record is incomplete. We cannot render a judgment on an incomplete record. Due to the peculiarities of this case, we feel that fairness to all parties is best served by remanding the entire case for new trial.
For the above reasons, the judgment of the district court granting Reid’s motions for directed verdict is reversed and those motions are denied. It is now ordered, adjudged and decreed that the entire case be remanded for new trial. Costs of this appeal are taxed against Herbert W. Reid. All other costs must await further proceedings.
REVERSED AND REMANDED.

. The McClinton’s filed a “First Supplemental and Amending Petition” in order to add Casco as a co-defendant in this suit.