417 So.2d 128 (1982)
Vernon McCLINTON, et al., Plaintiffs-Appellants,
v.
Herbert W. REID, et al., Defendants-Appellees.
No. 82-13.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
*129 Gahagan & Gahagan, Fred S. Gahagan and Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for intervenors-appellants.
Bolen & Erwin, Gregory S. Erwin and Charles H. Musterman, Alexandria, Jonathan M. Stewart, Arcadia, for defendants-appellees.
Before CULPEPPER, SWIFT and LABORDE, JJ.
SWIFT, Judge.
Vernon McClinton and his wife Gracie filed suit against Herbert W. Reid, doing business as Reid's Fire Equipment Company (Reid), and Casco Products Company (Casco), seeking recovery of fire damages to plaintiff's restaurant and its contents allegedly caused by an automatic fire extinguisher system malfunctioning. The system was sold, installed and maintained by Reid, but was manufactured by Casco. The McClintons' fire insurer, Travelers Insurance Company, intervened under a subrogation agreement to recover the amount of the loss it paid to the plaintiffs. The defendants, Reid and Casco, filed third party demands against each other. The case was tried before a jury. From a judgment in favor of the plaintiffs and intervenor against Reid only and dismissal of the other demands, the McClintons and Travelers have appealed.[1]
The record reveals that in October, 1974, Mr. Reid sold and installed a Casco Fire Extinguisher System in the Bayou Jack-O Restaurant owned by the McClintons. Reid testified that it worked like it was supposed to work and there were no problems with the system then. It was a 30 pound dry chemical fixed system designed to protect the specific area of the stove and two deep fat fryers. Reid provided the pipe and conduit for the system while Casco provided the remote pull switch, junction boxes, cornering pulleys, gas valves, surface nozzels, fusible link and fusible link holders, as well as 50 pound containers of powder.
The system was designed to work automatically and also manually. The fire extinguishing material was a dry powder, sodium bicarbonate. The powder was stored in a canister which was supposed to be pressurized to 350 pounds per square inch. Pipes led from the pressurized canister to four surface nozzles. Two of these nozzles were located above the stove and there was one above each deep fat fryer. The nozzles were designed to spray the powder simultaneously upon the melting of the fusible link. The latter was made to melt at 350° Fahrenheit and was located approximately six inches up in the exhaust duct of the hood over the protected area. According to Mr. Reid, the fixed system had to have 350 pounds per square inch of pressure to force all the powder out.
Reid also had a service contract with the McClintons in which he was required to inspect the system every six months and to maintain it. He testified that during these inspections he would check the pressure gauge to insure there was enough pressure for the system to operate, check the seals, change the fusible link, clean the nozzles, blow out the supply line, rearm the system *130 and tag it. He said he also checked the three portable hand extinguishers.
In April of 1975 a small fire evidently occurred in the restaurant and the system was manually activated by an employee. It functioned properly, emptying its powder throughout the kitchen. Under the maintenance contract Reid was supposed to recharge and reinstall the system. He testified that he replaced the old powder with new, cleaned the control leads and valves, reassembled the system and performed a leak test by submerging the system in water. The O ring seals and the pressure gauge were not replaced at that time, because they were still in good condition. Reid also stated that he repressurized the system to 350 pounds per square inch.
Thereafter the system was inspected by Mr. Reid semi-annually. His last inspection occurred on April 17, 1977. Less than a month later, on May 10, 1977, a fire occurred at the Bayou Jack-O Restaurant. This time the system did not activate either automatically or manually. Mr. McClinton and his employees testified that the fire originated in the deep fat fryer next to the stove within the area the system was designed to protect.
Ted Dugan, a representative of Travelers, testified that he arrived the day after the fire to inspect the premises. He observed that the fusible link had melted, but the system had failed to operate. He then called in Jerry Gilmore, an expert in the origin of fires and fire extinguishing units, to inspect the system.
Mr. Gilmore testified that he investigated the May 10, 1977, fire and found that it originated in the deep fat fryer adjacent to the kitchen range. His examination and hydrostatic testing of the system revealed that the fusible link had melted, but the fire extinguishing system failed to work both automatically and manually. Based on the fire patterns it was his opinion that the fire should have melted the fusible link before any heat could have adversely affected the canister or pressure gauge. The control head of the system was in the "open" position which should have allowed the powder and pressure to come out of the canister. There were no holes in the system or the canister, but the latter only contained 19¼ pounds of dry chemical powder instead of the 30 pounds required by the Casco manual. There was no indication of powder in the pressure gauge or the pipes leading to the nozzle. Mr. Gilmore found no evidence of defects or mechanical malfunction of the Casco system other than a leaking condition of the pressure gauge. He concluded that this leak occurred subsequent to the melting of the fusible link and that the failure of the system to activate was due to the "lack of pressurization of the system" before the fire. The witness added that either the system was never pressurized or that the pressure had "leaked off." However, there was no identifiable defect or mechanical reason for the pressure to have leaked off prior to the fire.
Dewey W. Lewis, an electrical engineer with expertise in the design, installation, and maintenance of chemical fire extinguishing systems, testified that he examined the system after it was removed to Dallas and found it to have extensive fire damage. The pressure gauge ruptured and there were traces of powder therein. Based on these facts the witness opined that the decompression of the gauge occurred at a rapid rate and probably ruptured during the fire. He found no apparent defects with the system other than the rupturing of the pressure gauge. His theory was that it either ruptured prior to the melting of the fusible link or at approximately the same time. Since this system was not designed to fight a fire outside of the system Mr. Lewis said that if the pressure gauge had ruptured before the melting of the fusible link this would indicate the fire began outside the system. The witness also stated that the pressure leak could have resulted from overpressurization.
Mr. McClinton and two employees of the restaurant testified that no one other than Reid and his employees ever worked on or tampered with the system.
At the conclusion of the trial the jury determined that Mr. Reid was solely responsible *131 for the damage caused by the failure of the system to operate. He has not appealed from the judgment and that ruling is not in question before this court. Therefore, the only issue on this appeal is whether the jury erred in failing to find Casco liable also for the fire damages to the plaintiffs' property.
The manufacturer of a product is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product's intended use. In such actions the buyer has the burden of proving the existence of a defect in the manufacture or design of the thing sold which renders it absolutely useless, or its use so inconvenient and imperfect that the buyer would not have purchased it had he known of the vice. Such defect must exist at the time of the sale. LSA-C.C. Arts. 2475, 2476 and 2520; Rey v. Cuccia, 298 So.2d 840 (La.1974); Gamble v. Bill Lowrey Chevrolet, Inc., 410 So.2d 1155 (La. App. 3 Cir. 1981); and Associates Financial Services Co. v. Ryan, 382 So.2d 215 (La.App. 3 Cir. 1980).
Whether a product is defective at the time of sale is a question of fact. Domingue v. Whirlpool Corp., 303 So.2d 813 (La.App. 3 Cir. 1974). And, of course, such factual determination by the trier of fact will not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In the present case the jury heard the testimony of the witnesses, including the experts, and having considered all of the evidence it obviously found that the system was not defective when sold and the failure of the extinguisher to function properly was caused by the fault of defendant Reid subsequent to the sale. There being an ample evidentiary basis for such determination, we affirm the verdict with no hesitancy.
The appellants also argue in brief that the jury erred in failing to find Casco negligent under the doctrine of res ipsa loquitur. They rely on Blackshere v. Kemper Ins. Co., 352 So.2d 275 (La.App. 2 Cir. 1977). In Blackshere the plaintiff was injured when a valve stem assembly blew out of an oxygen cylinder. The court found that both the manufacturer and the distributor had joint control and responsibility for the condition of the cylinder valve. This was not the case in the situation before this court. Unquestionably, Reid had the sole responsibility for maintaining and inspecting the system, including its pressurization. Therefore the doctrine of res ipsa loquitur is inapplicable and creates no inference of negligence as to Casco.
For the reasons assigned the judgment of the district court is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] This was the second trial by jury in the present case. In the first trial the district judge sustained Reid's motion for a directed verdict at the close of the plaintiff's evidence. After presentation of all evidence the jury returned a verdict in Casco's favor. This Court reversed that judgment and remanded the case for a new trial. McClinton v. Reid, 391 So.2d 506 (La.App. 3 Cir. 1980).