520 So.2d 956 (1987)
Martin TRAHAN, Individually, and as Administrator and Natural Tutor of his Minor Son, Byron Trahan, Plaintiff-Appellant,
v.
GERBER FOOD PRODUCTS, INC., et al., Defendants-Appellees.
No. 86-978.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
Writ Denied January 8, 1988.
*957 Edward J. Milligan, Jr., Lafayette, for plaintiff-appellant.
Gibbens & Blackwell, New Iberia, for defendants-appellees.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOMENGEAUX, Judge.
Plaintiff, Martin Trahan, individually, and on behalf of his minor son Byron, sued Gerber Food Products and its insurers, Canners Exchange Subscribers and Warren Inter-Insurance Bureau, for injuries allegedly sustained by Byron after he ingested glass found in a jar of baby food manufactured by Gerber.
A civil jury denied plaintiff recovery, and he has appealed.
Two issues are presented for our review:
(1) Did the trial court err in ruling that defendant Gerber did not allege an affirmative defense?
(2) Did the jury commit manifest error in determining that plaintiff's injuries were not caused by any fault of defendant Gerber?

FACTS
Plaintiff, Byron Trahan, the only child of Martin and Mary Trahan, was born with numerous serious birth defects including microcephaly, severe mental retardation, epilepsy, scoliosis and esophagitis. These physical problems have made Byron completely dependent on others for his physical care and maintenance. Byron's delicate digestive system can accommodate only pureed foods. Therefore, Mrs. Trahan has hand-fed Byron baby food his entire life.
On February 5, 1984, Byron's mother prepared to feed Byron, then sixteen years old, his noon meal. Mrs. Trahan selected from her pantry two jars of baby food, one vegetable and one meat. The vegetable, junior squash, was manufactured by defendant, *958 Gerber Company. The lid on the jar was designed with a "safety button," which pops up after being opened. This lid indicates to the consumer whether or not the jar had been previously opened. Mrs. Trahan examined the jar of junior squash and noted that the button was still depressed. The jar also emitted a sharp "pop" as she twisted the cap off. Mrs. Trahan inspected the jar's contents by looking for discoloration around the lid. Seeing none, she started to feed Byron from the jar with a rubber coated spoon. Within moments, she observed blood oozing from Byron's mouth, but was not alarmed because she thought he had simply bitten his tongue. The next spoonful of squash contained a protruding piece of glass. Frantically, she and her husband examined Byron's mouth for lacerations. Byron then started vomitting and glass shreds were seen in the waste matter. Byron sustained mouth lacerations and developed a severely infected colon (pseudomonas). Glass was found in stool samples for a full month after the incident. Additionally, lab testing showed occult blood in Byron's stool for over a year. Since the accident, Byron has become more irritable and for several months refused to eat or have his mouth cleaned.
Mrs. Trahan purchased the junior squash along with five (5) other jars from a Lafayette area Delchamps grocery store. Analysis of contents from five (5) of the jars showed that four (4) of the jars contained glass fragments. The sixth jar remained unopened until the trial. Before it was opened, it was observed that the lid was depressed. However, the popping sound emitted upon opening was more faint than usual.
At the trial, Gerber showed that, in its manufacturing process, each jar and lid are individually and identically coded with letters and numbers identifying the type of food, the date and the place of manufacture. Each Gerber plant has a non-reproducible letter identifying that particular plant as the manufacturer of the item. Thus, the jar and lid of each product should have the same code showing the same food item and manufacturing plant. However, the junior squash Byron was fed came from a jar coded in Ashville, North Carolina, and a lid coded in Fort Smith, Arkansas. Also, the lid identified the food as junior carrots, not junior squash. Thus, Gerber showed that the jar of junior squash Byron consumed was not purchased in the same condition as it had been manufactured, since the lid and jar were not coded by the same plant nor were they even coded for the same food.
Additionally, Gerber showed that an opened jar could be heated in a microwave oven with the lid on and the pressure would cause the lid to redepress. Therefore, Gerber argued, the fact that the lid was depressed did not guarantee that the jars had been unopened after the manufacturing process.
Analysis of the glass fragments revealed that they were not the same type of glass used in Gerber manufacturing. The chemical makeup of the fragments showed them to be of a higher barium content than any Gerber type jar. Also, plant managers for Gerber testified that there is no glass used in the production area. All gauges, thermometers, etc. are plastic and even light bulbs are covered in plastic. Also, there are no windows in the production area.
Gerber's final evidence concerned the jar that remained unopened until the trial. The jars used by Gerber are made by joining two halves of glass. A slight seam line remains and runs along the length of the jar. The lids have a plastisol interior lining. When the lid is placed onto the seamed jar and heated during processing to 250°F, the lid interior molds its shape onto the jar seam. After processing, when the lid is removed, a line appears at the jar seam spot in the lid interior. Joint exhibit No. 3 was a jar of junior squash that plaintiffs had never opened, and presumably, had never been opened by anyone else. The lid's exterior was marked as to where the interior lid seam should appear after manufacturing. When opened at trial, the seam lines of the lid and jar were not aligned, thus indicating that the jar had been opened previously.

*959 AFFIRMATIVE DEFENSE
Plaintiff contends that the trial court erred in allowing defendant to present evidence regarding Gerber's manufacturing process and, in particular, the lid sealing process. Plaintiff argues that this evidence amounted to defendant claiming that the glass in the jars was due to "fault of a third party" which, plaintiff contends, is an affirmative defense. Therefore, plaintiff argues, because Gerber failed to plead this in its answer, it should have been precluded from presenting this evidence at trial.
La.C.C.P. art. 1005 requires the answer to set forth all affirmative defenses and illustratively lists examples of affirmative defenses. The defense of fault of a third party is not a listed affirmative defense.
An affirmative defense is defined as something that raises new matter which, assuming the allegations in the petition to be true, constitutes an affirmative defense to the action and will have the effect of defeating plaintiff's demand on its merits. Webster v. Rushing, 316 So.2d 111 (La. 1975); Mashburn Agency, Inc. v. Universal Engineering & Supply, Inc., 451 So.2d 113 (La.App. 3rd Cir.1984).
Plaintiff claims that Gerber's evidence of its manufacturing process amounted to an allegation of tampering which constitutes the defense of fault of a third party. Plaintiff further argues that under the jurisprudential definition in Webster, supra, fault of a third party constitutes an affirmative defense, and, therefore, since Gerber failed to plead this affirmative defense in its answer, it should not have been allowed to present evidence of the manufacturing process.
Pretermitting any determination of whether or not "fault of a third party" constitutes an affirmative defense, plaintiff's contention lacks merit because defendant, in presenting evidence of its manufacturing process, was merely rebutting the plaintiff's allegation of negligent manufacturing. In his petition, plaintiff alleged that it was through Gerber's negligent manufacturing process of baby food that glass fragments were in the product. Gerber did not dispute plaintiff's claim that glass was in the jar. Through its general denial, it simply denied manufacturing the food in this condition. Evidence of a negligence-free manufacturing process would rebutt plaintiff's allegations and exculpate Gerber. However, as there was no dispute that glass was present, this same evidence logically inferred that someone else had placed it there. Gerber was not affirmatively stating that someone else had placed the glass in the jar; it merely denied manufacturing it in this way and planned to present evidence as to how they could not have manufactured it as such. Since defendant's evidence of the manufacturing process was simply a rebuttal to plaintiff's allegations of negligent manufacturing, this evidence was admissable.
Additionally, through defendant's general denial, plaintiff could have reasonably anticipated that defendant would rebut an allegation of negligent manufacturing with evidence of a non-negligent manufacturing process. The general purpose in requiring that certain defenses be affirmatively pleaded is to give the plaintiff fair notice of the defense and, thereby, prevent last minute surprise to the plaintiff. Mashburn Agency v. Universal Engineering & Supply Inc., supra. As plaintiff was adequately put on notice through defendant's general denial that this type of evidence would be presented, it was unnecessary for defendant to specifically plead a defense in order to alert plaintiff that this evidence would be forthcoming. We find no error in the trial judge's ruling on this issue.

MANIFESTLY ERRONEOUS JURY VERDICT
Plaintiff next contends that the jury was manifestly wrong in determining that the plaintiff failed to prove by a preponderance of the evidence that defendant caused plaintiff's injuries. Plaintiff also argues that the jury committed manifest error in denying recovery to Mr. Trahan, individually, and on behalf of his son, Byron.
It is well settled that a manufacturer of a product may be held liable for *960 injuries caused by their product, without any particular act of negligence being proven, if a plaintiff shows (1) there was a defect in the product; (2) that the product was in normal use; (3) that the product was unreasonably dangerous in that use; (4) and the plaintiff's injuries were caused by the defect. Weber v. Fidelity & Casualty Ins. Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971); Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App. 3rd Cir.1979), writ denied, 371 So.2d 835, 372 So.2d 568 (La.1979). Plaintiff established a prima facie case by presenting evidence of these four criteria. Defendant rebutted the plaintiff's case with evidence of a non-negligent manufacturing process.
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the reviewing court will not disturb factual findings on appeal in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Conly v. Town of Forest Hill, 463 So.2d 72 (La.App. 3rd Cir. 1985).
From the evidence presented by defendant, the jury had a reasonable factual basis from which to conclude that Gerber was not negligent in manufacturing the baby food. The jury obviously believed that this evidence exculpated Gerber from any fault and inferred that someone else, for whom it was not responsible, placed the glass in the jar. Gerber presented evidence that the glass in the baby food was not the same type used in its manufacturing; no glass of any kind was present in the processing area; the safety lid can be redepressed after being opened; the product, as purchased by Mrs. Trahan was not in the same condition as when it left the Gerber plant; and another jar purchased from the same place on the same day had been opened prior to being purchased by Mrs. Trahan. We find no manifest error in the jury's determination that defendant was not at fault, nor liable for the plaintiff's injuries.
For the above and foregoing reasons, the judgment of the trial court dismissing plaintiff's claim is affirmed.
All costs of this appeal are to be borne by the plaintiff.
AFFIRMED.