544 So.2d 1249 (1989)
Nelson LEDAY and the Home Indemnity Company (Intervenor), Plaintiff-Appellant,
v.
The AZTEC CORPORATION on its own behalf and appearing herein also as the Successor of Aztec Tools, Inc., Aztec Pipe & Supply Company, Inc. and/or Aztec Mud & Chemicals, Inc. and Wellheads, Inc.; Aztec Wellheads, Inc., Canal Refining Company, Fred Balser, C.W. Sunday, Jr., Donald Briggs, Donald G. Briggs, Frank Broussard, Ball Marketing, Inc., A.V. Schaff, Edah Keating, Roger Chapman and Navistar International Transportation Corporation, referred to in the original answer as International Harvester, Defendants-Appellees.
No. 88-270.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1989.
*1250 Marx & Marx, G. Paul Marx, Lafayette, for plaintiff-appellant.
Juneau, Hill, Judice & Adley, P.L.C., Kraig Strenge, John K. Hill, Lafayette, for plaintiff-intervenor-appellee.
Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, P.C., St. Paul Bourgeois, Voorhies & Labbe, John N. Chappuis, Jeansonne & Briney, Patrick J. Briney, Onebabe, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Joseph Onebane, Preis, Kraft & Daigle, P.L.C., Gregory J. LaBorde, Lafayette, for defendants-appellees.
Before FORET, YELVERTON and KING, JJ.
KING, Judge.
The main issue presented by this appeal is whether or not the trial court committed manifest error in finding plaintiff failed to prove his employer's diesel truck was defectively designed and the cause of an explosion which resulted in injuries to him.
This is a products liability action instituted by Nelson Leday (hereinafter plaintiff) to recover damages for personal injuries suffered as a result of an explosion which occurred when he lit a cigarette while refueling a diesel truck owned and operated by his employer, Aztec Corporation (hereinafter Aztec). Plaintiff sued various parties, including Aztec and its executive officers, and the manufacturer of the truck, International Harvester. Plaintiff's claims against all defendants, except International Harvester, were dismissed by the trial court prior to trial. International Harvester became Navistar International Transportation Corporation (hereinafter defendant), and was the only defendant at trial.
A trial on the merits was held and the case was taken under advisement. The trial court found that plaintiff failed to prove that the accident and resulting injuries were caused by a defect in the truck and rendered judgment dismissing plaintiff's suit against defendant. Plaintiff perfected a timely devolutive appeal. We affirm.

FACTS
On the morning of March 24, 1979, at approximately 3:15 A.M., plaintiff reported to work at the Aztec plant near Broussard, Louisiana, where he was employed as a mechanic and relief truck driver. When plaintiff arrived at the plant, he hooked up an International Harvester 4300 diesel truck to a trailer, drove the rig over to the Aztec fuel pumps, turned off his engine, and commenced refueling an 80 gallon saddle tank on the passenger side of the truck. The truck had been used to make a run earlier in the evening but had been parked and completely stopped prior to 2:00 A.M.
While refueling the truck, plaintiff lit a cigarette with his disposable butane lighter. A small explosion occurred and his shirt caught on fire, resulting in extensive burns to his face, neck, left arm, and throughout the trunk of his body. Plaintiff's treating physician, a plastic surgeon, testified that the burns ranged from superficial to deep thermal and his estimate was that they covered 25 percent of plaintiff's body.
An eyewitness to the accident, Clifton Sam, testified that the fire produced a blue-colored flame. The fire did not burn, blister or discolor the truck in any way nor was there any evidence of soot residue on the truck after the accident. Plaintiff testified that the explosion was not loud and did not knock him off his feet.
On appeal, plaintiff asserts three assignments of error. The first assignment of error alleges that the trial court erred in finding plaintiff failed to prove the truck was unreasonably dangerous due to a design defect and/or a failure of the manufacturer *1251 to warn potential users about dangers inherent in the normal operation of the truck. The second assignment of error alleges the trial court erred in giving any weight to the defendant's expert on the issue of design defect. The third assignment of error alleges the trial court erred in admitting evidence on the defense of alteration of a product since this was an affirmative defense that had not been pled.

PROOF OF DEFECTIVE DESIGN
Plaintiff first urges the trial court erred in determining that he failed to prove a design defect in the truck. Because the trial court failed to articulate the basis for his ruling, plaintiff speculates that the trial judge held him to a greater burden of proof than required by law.
In Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986), the Louisiana Supreme Court summarized the basic principles of the plaintiff's cause of action under a theory of strict tort products liability as follows:
"In order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product." (Citations omitted.) Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, at page 113 (La.1986).
One classification of products, described by the Supreme Court as unreasonably dangerous to normal use, is that with a design defect since:
"A product may be unreasonably dangerous because of its design for any one of three reasons: (1) A reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. This is the same danger-utility test applied in determining whether a product is unreasonably dangerous per se. Keeton, The Meaning of Defect, supra, p. 592; Cf. Hebert v. Brazzel [403 So.2d 1242 (La. 1981)], supra. This first reason for concluding that a design is defect is governed by the same criteria for deciding whether a product is unreasonably dangerous per se. The overlap in categories makes it unnecessary to decide whether a product's defect is one of design or of another kind if the product is proven to be unreasonably dangerous per se; (2) Although balancing under the risk-utility test leads to the conclusion that the product is not unreasonably dangerous per se, alternative products were available to serve the same needs or desires with less risk of harm; or, (3) Although the utility of the product outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences...." Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, at page 115 (La.1986).
Whether a product is defective because of its design is a question of fact, and a determination by a trier of fact on such fact will not be disturbed on appeal absent manifest error. LeBleu v. Homelite Div. of Textron, Inc., 509 So.2d 563 (La.App. 3 Cir.1987); Tyler v. Natchitoches Coca-Cola Bottling Co., 479 So.2d 689 (La.App. 3 Cir.1985), writ granted, 482 So.2d 620 (La.1986), affirmed, 491 So.2d 358 (La. 1986); McClinton v. Reid, 417 So.2d 128 (La.App. 3 Cir.1982).
Applying these principles to the case at hand, we can only conclude that plaintiff fell well short of proving the above elements by a preponderance of the evidence.
Plaintiff maintained in his pleadings and at trial that the truck was designed with an exhaust pipe that ran adjacent to the passenger-side fuel tank and that heat from the exhaust increased the temperature of the normally non-volatile diesel fuel past its flash point, increasing the likelihood of an explosion.
Plaintiff's case was presented primarily through the testimony of Dr. Gordon Goldman, an expert in the analysis of petroleum products. Dr. Goldman conducted experiments *1252 on the truck involved in the accident to determine if this indeed could have occurred. Dr. Goldman stated that the flash point of diesel fuel commonly used by vehicles is significantly greater than 100 degrees Fahrenheit.[1] He also stated that one would easily expect to see and smell diesel vapors if the diesel had been heated to this point. Plaintiff testified at trial that he neither saw nor smelled any diesel vapors or fumes during the refueling operation.
Dr. Goldman's experiments on the truck, conducted during daylight hours with relatively warm ambient temperatures, and with the truck running for over one and one-half hours, indicated that the fuel in the tank was heated to no more than 100 degrees Fahrenheit.
Dr. Goldman admitted that if the ambient temperature at the time of the accident was 70 degrees and that if the truck had not been running and the temperature inside the tank was more or less equal to the outside air temperature, that the amount of vapors would have been insignificant and could not have caused an explosion.
Defendant presented the testimony of Dr. Davy L. Bernard, accepted by the court as an expert in physics and accident reconstruction. Dr. Bernard testified that he has investigated three cases in the past involving flash fires, all involving petrochemicals or hydrocarbons, and was working on two other accidents involving diesels at the time of trial.
On September 14, 1987, Dr. Bernard did an analysis on a truck, which was represented to him as having a factory manufactured exhaust system, to determine whether the fuel tanks emitted flammable vapors under conditions similar to those when the accident occurred. He testified that the ambient temperature has a direct affect on the temperature of the diesel fuel and that he determined the ambient temperature at the time of the accident was 49 degrees Fahrenheit. After running the truck 45 minutes, with an ambient temperature of 64.4 degrees Fahrenheit, the temperature of the saddle tank only measured 73 degrees Fahrenheit. This would not be a high enough temperature to create diesel fumes.
Dr. Bernard also conducted a test to determine if there was any heat transferred from the exhaust system to the fuel tanks. He found no significant heat transfer, and opined that there is "probably less so when its running because of the wind currents between the exhaust and the tanks."
Dr. Bernard stated if vapors from the tank would have been ignited there would have been a louder explosion, and the explosion would have knocked plaintiff off his feet. He further stated that, because diesel is an oil based fuel, it would produce smoke and deposit sooty residue on everything in the vicinity of the explosion. No smoke was seen at the time of explosion and there were no sooty deposits on the truck after the accident.
Based on his test results and the testimony of witnesses showing that there was no loud explosion nor evidence of a fire on the truck, Dr. Bernard concluded that he did not believe diesel vapors were the cause of the explosion.
Defendant presented as a fact witness the testimony of Gary Whitcomb, the product integrity manager of its truck manufacturing division. Whitcomb supplied diagrams of the fuel and exhaust systems originally installed on the International Harvester truck. His investigation revealed that there were radical changes to the truck's exhaust system after it left defendant's possession. He testified that several sections of the original exhaust pipe had been replaced with flexible tubing and that clamps designed to keep the pipe stationary had been removed. This alteration allowed the exhaust pipe to swing freely under the truck's frame close to the fuel tank. He testified that the exhaust system as modified could possibly introduce some heat to the fuel tank if there was constant contact over an extended period of time.
*1253 During trial there was evidence which suggested that butane gas from plaintiff's lighter caused the flash fire. Both experts testified that butane gas gives off a blue flame when burned. Plaintiff admitted that he had the butane lighter in his left hand when he lit the cigarette. His testimony and that of his physician, Dr. Louis G. Mes, shows that plaintiff's left hand was completely burned and the left side of his body was burned worse than his right. Dr. Bernard opined, given the nature of plaintiff's injuries, that it was the butane that caused the initial burns, but that plaintiff's clothes contributed significantly to the severity of his injury.
In the case at bar, the trial judge could have reasonably concluded that plaintiff's injuries resulted from a defective butane lighter, rather than volatile diesel fumes from the truck's fuel tank. Under the evidence presented in this case, we are unable to find the trial court clearly in error or manifestly wrong in determining that plaintiff failed to establish a defect in the truck as a cause of the accident.
This assignment of error is without merit.

DUTY TO WARN
Plaintiff also contends the trial court failed to consider that the truck was unreasonably dangerous because of defendant's failure to warn about the possibility of a flash fire due to heating of the diesel and the presence of additives in the diesel fuel.
A product may be unreasonably dangerous to normal use if the manufacturer fails to warn users about a danger related to the way the product is designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the normal user. Bloxom v. Bloxom, 512 So.2d 839 (La.1987); Halphen, supra; LeBleu, supra. In the context of the manufacturer's duty to warn of dangers in the use of a product, the manufacturer is obligated to anticipate the environment in which the product is used and to give notice of the potential risks arising from foreseeable use in the foreseeable environment. Bloxom, 512 So.2d at page 843.
At trial plaintiff made much of the fact that additives were occasionally used to prevent water accumulation in the truck's fuel system. Dr. Bernard testified that certain additives, such as gasoline and alcohol, could dramatically increase the volatility of diesel fuel. However, there was no testimony by anyone or any evidence introduced at trial identifying any additive used by defendant or indicating that any additive was in fact in the diesel fuel at the time of the accident. Nor was there any evidence presented causally relating any additives with the explosion and fire which caused plaintiff's injuries.
Defendant's representative, Gary Whitcomb, made the following observation at trial concerning the use of additives:
"If you don't alter these gasoline or alcohol additives, there is no danger from the normal heat in a diesel engine fuel system. There's no danger, certainly no major significant danger of unexpected fire or explosion."
Likewise, there was no evidence indicating that the heating of the diesel fuel created an unreasonably dangerous product. Neither expert determined that there was any significant heat transfer from the modified exhaust systems to the fuel tanks. Gary Whitcomb testified that the truck in question utilized a fuel recirculation system, common to all diesel trucks, to lubricate and cool the engine injectors. He stated that the temperature in the combustion chambers probably reaches 1200 to 1400 degrees Fahrenheit. However, he could not state how hot the diesel gets by this recirculation.
In conclusion, we find the failure to provide a warning was not a cause-in-fact of plaintiff's injuries. This assignment of error is unsupported by the evidence in the record and is without merit.

EXPERT WITNESSES
Plaintiff next contends that the trial court erred in according any weight to Dr. Bernard's testimony on the issue of design *1254 defect. Additionally, plaintiff argues the trial court committed an abuse of discretion insofar as it may have considered Dr. Bernard's testimony as negating plaintiff's version of the accident.
In weighing opposing expert opinions, the trier of fact should consider their professional qualifications, experience in their particular science or field, reasons given in support of their opinions, and other evidence which supports or detracts from their credibility. Whittle v. Miller Elec. Mfg. Co., 507 So.2d 266 (La.App. 3 Cir. 1987); Pogo Producing Co. v. United Gas Pipe Line Co., 511 So.2d 809 (La.App. 4 Cir.1987), writ den., 514 So.2d 1164 (La. 1987). A trier's evaluation of expert and lay testimony will not be disturbed unless found to be clearly wrong. Dean v. Terrebonne Parish Police Jury, 510 So.2d 82 (La.App. 1 Cir.1987).
While the opinion of the trial judge does not address the testimony of Dr. Goldman and Dr. Bernard, it is apparent that he did not assign much credibility to Dr. Goldman's testimony. Indeed, the record reflects that Dr. Goldman's experiments, when viewed in the context most favorable to plaintiff, actually prove a case for the defendant.
We find the trial judge did not commit clear error and did not abuse his discretion in assessing the testimony of both experts. This assignment of error is without merit.

AFFIRMATIVE DEFENSE
Finally, plaintiff contends that the trial court erred in allowing defendant to introduce evidence on the issue of the exhaust system's alteration. Specifically he argues such evidence constitutes an affirmative defense and should have been excluded on the grounds that the defense was not specifically pled.
LSA-C.C.P. Art. 1005 requires that a defendant's answer must set forth any matter constituting an affirmative defense.
An affirmative defense is one which raises new matter not covered in the plaintiff's petition and which will have the effect of defeating plaintiff's demand on its merits. Keller v. Amedeo, 512 So.2d 385 (La.1987); Mashburn Agency v. Universal Engineering, 451 So.2d 113 (La.App. 3 Cir.1984). The general purpose in requiring certain defenses to be affirmatively pled is to give the plaintiff fair notice of the nature of the defense, thus preventing a last minute surprise to the plaintiff. Mashburn Agency, supra; Trahan v. Gerber Good Products, Inc., 520 So.2d 956 (La.App. 3 Cir.1987), writ den., 522 So.2d 563 (La.1988).
The trial judge allowed evidence of alteration of the exhaust system to be introduced, finding that all parties had more than enough notice of the alterations to the truck through discovery in the seven years that had elapsed between the filing of the suit and trial. The trial judge further found that plaintiff had the burden of proving the alleged defect existed when the truck left the manufacturer, and that evidence of alteration was admissible to controvert an essential element of plaintiff's case.
We find no clear error in the trial court's ruling. The evidence of alteration was admissible for the purpose of refuting an essential allegation in plaintiff's petition and neither raised a new matter nor prejudiced the plaintiff's claim in any manner. See, Keller, supra.
For the foregoing reasons, the judgment of the trial court dismissing plaintiff's claim is affirmed.
All costs of this appeal are taxed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] Dr. Goldman defined flashpoint as the temperature at which there is a minimum amount of vapors that are created from a material that will support combustion.