Donald HORTON and Betty Horton,
Plaintiffs–Appellants,

v.

BUHRKE, A DIVISION OF KLEIN
TOOLS, INC. and Klein Tools,
Inc., Defendants–Appellees,

v.

AETNA LIFE & CASUALTY COMPA-
NY, Intervenor–Appellant.

No. 90–4280.

United States Court of Appeals,
Fifth Circuit.

March 18, 1991.

Jennings B. Jones, Jones, Jones & Alexander, Cameron, La., for Horton.

Patrick M. Wartelle, Roy, Carmouche, Bivins, Judice, Henke & Breaud, Lafayette, La., for Aetna.

Thomas W. Lewis, John A. Berry, Boggs, Loehn & Rodrigue, New Orleans, for Buhrke.

Before JOHNSON, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Appellants appeal from the denial of a motion for directed verdict, the denial of a motion for judgment notwithstanding the verdict, and the judgment in favor of Appellees. This Court affirms in part, and reverses and remands in part.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Donald Horton was employed as a structural iron worker for approximately thirteen years. The duties of a structural iron worker require that work be performed while suspended above the ground. Thus, as a part of his daily routine, Donald Horton used a safety belt. In general terms, a safety belt is strapped around a worker's waist. On each side of the safety belt is a "d-ring." A worker attaches to each d-ring a length of rope equipped with a spring-loaded snap hook at both ends, known as a lanyard. By passing the rope lanyard around an object and fastening the snap hooks to the d-rings of the safety belt, a worker can secure himself to an object above the ground. This enables the worker to work in high places while keeping his hands free.

On June 1, 1987, Donald Horton was working on a section of structural iron when the lanyard snap hook on his safety belt either disengaged or was never properly engaged, causing Donald Horton to fall. The fall resulted in severe injury. Thereafter, Donald Horton and his wife, Betty

Horton (collectively, the "Hortons"), brought a products liability action against the manufacturer of the snap hook, Defendant Klein Tools, Inc. ("Klein"). The Hortons also named Buhrke, a division of Klein Tools, Inc., as a defendant, but the district court dismissed the suit against Buhrke for failure to prosecute. Aetna Life & Casualty Company ("Aetna"), the workman's compensation insurer for Donald Horton's employer, intervened to recover medical and compensatory benefits that Aetna paid as a result of Donald Horton's injury.

The suit was tried before a jury. The district court gave the jury a verdict form with a number of special interrogatories. The first interrogatory asked whether the snap hook was unreasonably dangerous to normal use at the time it left the manufacturer's control. After hearing the evidence, the jury answered the first interrogatory in the negative. Because of its response to the first interrogatory, the jury was not required to answer any further questions. The district court entered judgment accordingly in favor of Klein. The Hortons and Aetna (collectively, "Appellants") filed a motion for judgment notwithstanding the verdict, or alternatively, a new trial. The district court denied the motion with written reasons. A timely notice of appeal followed.

## II. DISCUSSION

Appellants make two arguments on appeal. First, Appellants argue that the district court erred in denying their motion for a directed verdict and their motion requesting judgment notwithstanding the verdict. Second, Appellants argue that the district court failed to adequately instruct the jury or to submit proper interrogatories to the jury.

### A. *Relevant Law*

As an initial matter, it is important to determine whether the Louisiana Products Liability Act ("LPLA"), La.Rev.Stat. Ann. § 9:2800.51 *et seq.* (West Supp.1990), governs the issues in this action. The LPLA, which took effect on September 1,

1988, sets forth certain modifications to the existing strict products liability law. Courts have recognized that while the procedural aspects of the LPLA apply retroactively, the substantive aspects apply prospectively only. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 920 F.2d 259, 261–262 (5th Cir.), *aff'g*, 910 F.2d 167 (5th Cir.1990); *Berry v. Commercial Union Ins. Co.*, 565 So.2d 487, 491 (La.Ct.App. 1990). Since the accident in the instant case occurred June 1, 1987, the provisions of the LPLA which affect substantive rights are inapplicable.

■ A thorough discussion of Louisiana strict products liability law is found in *Halphen v. Johns–Manville Sales Corp.*, 484 So.2d 110 (La.1986), an opinion authored by the Louisiana Supreme Court. *Halphen* sets forth the elements of a strict products liability claim and the four theories of recovery. To establish liability against a manufacturer of a product, a plaintiff must show that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. 484 So.2d at 113. There are four theories of recovery to prove that the product was unreasonably dangerous to normal use: (1) a product may be unreasonably dangerous per se, (2) a product may be unreasonably dangerous in construction or composition, (3) a product may be unreasonably dangerous due to the manufacturer's failure to warn, and (4) a product may be unreasonably dangerous in design. 484 So.2d at 114–15. Under the failure to warn theory, a product may be unreasonably dangerous

> if the manufacturer fails to adequately warn about a danger related to the way the product is designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user.

484 So.2d at 114–15. Under the design theory, a product may be unreasonably dangerous for one of three reasons: (1) a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product, (2) although balancing under the risk-utility test leads to the conclusion that the product is not unreasonably dangerous per se, alternative products were available to serve the same needs or desires with less risk of harm, or (3) although the utility of the product outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences. 484 So.2d at 115. The determination of whether a product is unreasonably dangerous is a fact question. *Goode v. Herman Miller, Inc.*, 811 F.2d 866, 869 (5th Cir. 1987).

**B. *Directed Verdict and Judgment Notwithstanding the Verdict***

■ The same standard of review applies to the denial of a motion for a directed verdict and the denial of a motion for judgment notwithstanding the verdict. *Long v. Shultz Cattle Co.*, 881 F.2d 129, 132 (5th Cir.1989). This Court examines the record in the light most favorable to the party opposing the motion. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). Reversal of the district court's judgment is proper only if this Court finds that there was no conflict in substantial evidence such that reasonable minds could differ. *Id.*

■ In the instant case, Appellants have failed to persuade this Court that no rational jury could have found in favor of Klein. A review of the evidence indicates that there was at least a fact question as to whether Donald Horton's fall resulted from a condition of the snap hook. Appellants attempted to show that a design defect caused the snap hook to accidentally disengage. Notwithstanding, the evidence allowed a conclusion that the accident did not occur because of any design defect, but because Donald Horton failed to properly engage the snap hook. Thus, this Court is unable to find that the district court erred in refusing to grant the motion for directed verdict or the motion for judgment notwithstanding the verdict.

## C. *Jury Instructions and Interrogatories*

 While a court is not required to give every correct instruction submitted by a party, a trial court has a duty to instruct the jurors, fully and correctly, on the applicable law of the case. *See Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 424–25 (5th Cir.1985). The duty includes giving an instruction on the law underlying each of a plaintiff's theories of recovery so long as the desired instruction is brought to the court's attention in a timely manner, the desired instruction is legally correct, and the theory is supported by the evidence. *Id.* at 425 n. 10. Still, a trial court is entitled to considerable latitude in fashioning jury instructions. *See Corey v. Jones*, 650 F.2d 803, 806 (5th Cir.1981). This Court will reverse only when "the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 168 (5th Cir.1990) (quoting *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir.1979)).

Appellants argue that the district court improperly instructed the jury on three aspects of the Hortons' case: foreseeable misuse, comparative negligence, and the relevant strict products liability theories.

### 1. Foreseeable Misuse

 Appellants contend that the district court did not inform the jury that normal use includes foreseeable misuse and that a manufacturer is liable for foreseeable misuse. This Court finds no merit in this contention. The district court, in a supplemental charge to the jury, gave the following instruction: "Normal use includes reasonable, foreseeable misuse and a manufacturer is obligated to take in account such misuse in designing its product." This instruction constituted a correct enunciation on the law regarding foreseeable misuse. *See Goode*, 811 F.2d at 870.

### 2. Contributory Negligence

 Appellants next contend that the district court erred in charging the jury on contributory negligence. Louisiana products liability law recognizes contributory negligence as a defense when "the consequent reduction of the [plaintiff's] award will realistically promote user care without drastically reducing the manufacturer's incentive to make a safer product." *Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 383 (5th Cir.1990). Appellants made no objection to the contributory negligence instruction at trial, as required by Federal Rule of Civil Procedure 51. In fact, the Hortons requested an instruction and an interrogatory on comparative fault, and an interrogatory on contributory negligence. Under these circumstances, this Court can find no error here.

### 3. Strict Products Liability Theories

Appellants assert that the district court erred in failing to instruct the jury on each of the Hortons' theories of recovery and in failing to submit an interrogatory on each theory. The Hortons asked the district court, prior to the jury charge, to submit instructions on the unreasonably dangerous per se theory, the design theory, and the failure to warn theory. Thus, the district court was given timely notice of each of the desired instructions. Further, the desired instruction on each theory was substantially correct as the Hortons quoted verbatim the language of *Halphen*.

The remaining question in determining if the Hortons were entitled to each desired instruction focuses on whether there was evidence presented on each of the three theories. To answer this question, this Court reviewed the entire record. First, the record fails to show that the Hortons presented any evidence on the unreasonably dangerous per se theory. As a result, the Hortons were not entitled to an instruction on the unreasonably dangerous per se theory.

Second, as for the design theory, the Hortons presented substantial evidence on such theory. Indeed, Klein concedes that the Hortons advanced the design theory. Accordingly, the Hortons were entitled to an instruction on the design theory.

Finally, there was evidence admitted which tended to support the failure to warn theory. The Hortons submitted evidence at trial that Klein had published a catalog in which it warned of the possibility of accidental disengagement. This catalog was probative of Klein's knowledge of an inherent danger in the snap lock. While the catalog was given to distributors, it did not ordinarily reach the hands of the user of the snap lock. Moreover, Donald Horton testified that he was not aware of the risk of accidental disengagement. From this, the jury could have inferred that the risk was not obvious to the average user. In sum, the Hortons were entitled to jury instructions on the design theory and the failure to warn theory.

We must next evaluate the adequacy of the instructions given. After reviewing the initial and supplemental instructions, this Court is convinced that the instructions, as a whole, adequately informed the jury of the law on the failure to warn theory. The instructions concerning the design theory, on the other hand, were wholly inadequate. Critically, no mention was made of any of the three reasons a product may be unreasonably dangerous because of design, as enunciated in *Halphen.* Furthermore, the instructions failed to distinguish between the design theory and the failure to warn theory. In a written memorandum denying Appellants' motion for judgment notwithstanding the verdict, the district court stated that its instructions were proper since "warning was inextricably intertwined with design." Under the law applicable to the instant case, the district court erred. The Louisiana courts have clearly differentiated between the theories of recovery in strict products liability law. *See Brown v. Parker–Hannifin Corp.,* 919 F.2d 308, 311 n. 9 (5th Cir.1990). In *Halphen,* the Louisiana Supreme Court stated that a

> plaintiff may elect to try his case upon any or all of the theories of recovery. If he decides to pursue more than one, he is entitled to an instruction that evidence which is admissible exclusively under one theory may be considered only for that purpose.

484 So.2d at 115. Specifically, the courts have treated the design theory and the failure to warn theory as two independent theories for recovery. *See, e.g., Miles v. Olin Corp.,* 922 F.2d 1221, 1227 (5th Cir. 1991); *Ingram v. Caterpillar Machinery Corp.,* 535 So.2d 723, 728–29 (La.1988); *Leday v. Aztec Corp.,* 544 So.2d 1249, 1251–52 (La.App.1989); *see also Davis v. Commercial Union Ins. Co.,* 892 F.2d at 383. The instructions here improperly confused the two theories by creating an inference that design and failure to warn were necessarily related and were not two distinct theories.

It is difficult to find merit in Klein's argument on appeal that the incorrect jury instructions do not justify a new trial inasmuch as Klein admitted at trial that the theories were independent. Reviewing the jury charge as a whole, this Court is left with the impression that the jury "was not properly guided in its deliberations." Our conclusion is buttressed by the jury's conduct during its deliberations, evidencing some confusion. The jury sent several messages to the court requesting "a copy of the Louisiana Products Liability Law," and a definition of "unreasonably dangerous." Thus, Appellants are entitled to a new trial.

After having decided that the jury instructions were inadequate, this Court need not decide whether the special interrogatories submitted were proper.

### III. CONCLUSION

This Court is unable to conclude that the district court erred in refusing to grant the motion for directed verdict or the motion for judgment notwithstanding the verdict. However, because the district court gave inadequate jury instructions on the Hortons' theories of recovery, the judgment in favor of Klein is reversed and the case is remanded for a new trial.

AFFIRMED IN PART, REVERSED AND REMANDED FOR A NEW TRIAL