Thomas M. SVALBERG, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

C. Brock LIPPITT, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

Nos. 86–1674, 86–1708.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1987.

Decided May 26, 1989.

Thomas D. Birge, with whom Gene R. Thornton, Denver, Colo., was on the brief, for petitioner, C. Brock Lippitt in No. 86–1708. Douglas J. Gilbert, New York City, also entered an appearance for petitioner in No. 86–1708.

Joseph F. Krys, for petitioner, Thomas M. Svalberg in No. 86–1674. Harold M. Golz, Denver, Colo., also entered an appearance for petitioner in No. 86–1674.

Rosalind C. Cohen, Asst. Gen. Counsel, S.E.C., with whom Daniel L. Goelzer, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Washington, D.C., and Joseph H. Harrington, Attorney, S.E.C., were on the brief, for respondents.

Before WALD,* Chief Judge, EDWARDS, Circuit Judge, and PARKER,** District Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

In these two consolidated cases, Thomas M. Svalberg and C. Brock Lippitt petition for review of an order of the Securities and Exchange Commission ("SEC" or "the Commission") affirming sanctions imposed upon them as principals in a now-defunct securities brokerage firm, Security Traders, Inc. ("SCI"), by the National Association of Securities Dealers ("NASD"). Because the record before us clearly supports the SEC's judgment on the violations found and the sanctions imposed, we deny the petitions for review.

## I. BACKGROUND

In 1983, the District Business Conduct Committee ("DBCC") of the NASD found petitioners guilty of violating Article III, § 1, of the NASD Rules of Fair Practice, which requires members to "observe high standards of commercial honor and just and equitable principles of trade" when conducting business. The DBCC found the petitioners guilty of violating this standard because of their actions involving SCI's underwriting of an issuance of stock of the SanAnCo Energy Corporation. The stock had been offered on an "all-or-nothing" basis, whereby no shares are sold unless a specified minimum is sold within a limited time period, and the underwriter receives a commission only if the offering is successful. Just before the closing of the SanAnCo offering, SCI's four principals decided to purchase a little under two percent each of the SanAnCo shares because of their fear that the offering might otherwise fail due to a weak market. The DBCC found, and the NASD affirmed, that this action violated Article III, § 1, because, rather than returning investor funds as promised in the prospectus, petitioners fraudulently created the impression that the minimum number of shares had been sold to the public.

On appeal to the SEC pursuant to section 19(d)(2) of the Securities Exchange Act ("the Act"), 15 U.S.C. § 78s(d)(2) (1982), the Commission affirmed the NASD's finding that the petitioners had violated the NASD rules by "creat[ing] the facade of a successful offering" in contravention of the

---

* Former Circuit Judge Bork was a member of the panel at the time this case was argued. Following Judge Bork's resignation from the court, Chief Judge Wald was assigned as the third member of the panel deciding this case. In reaching judgment on this matter, Chief Judge Wald has had full access to the briefs of the parties and the record on appeal.

** Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

conditions under which they had sold the stock to investors. *C. Brock Lippitt*, 48 S.E.C. 524, 528 (1986). The SEC found it "well established that undisclosed purchases by underwriters or their affiliates, arranged for the purpose of closing an unsuccessful 'all-or-none' ... offering, are fraudulent." *Id.* at 526 (citing, *inter alia, A.J. White & Co. v. SEC*, 556 F.2d 619, 623 (1st Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *SEC v. Coven*, 581 F.2d 1020, 1028 (2d Cir.1978), *cert. denied*, 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed. 2d 640 (1979)). Although the SEC set aside one of the NASD's findings of violation, the Commission nonetheless affirmed in full the sanctions imposed by the NASD. *See* 48 S.E.C. at 528. These sanctions included barring petitioners from serving as principals in any NASD member firm, suspending them for two weeks from association with member firms in any capacity, and imposing a $15,000 fine on each.

## II. ANALYSIS

Lippitt and Svalberg now petition this court for review of the SEC's order pursuant to section 25(a) of the Act, 15 U.S.C. § 78y(a) (1982).[1] With respect to the finding of violations, they allege that their activity was neither deceptive nor fraudulent because their purchase of the SanAnCo stock was a *"bona fide* investment." In the alternative, petitioners claim that there is no evidence that they acted with an intention to deceive investors; they also contend that the nondisclosure of their purchase of SanAnCo shares cannot be viewed as material to any charge against them. Finally, petitioners argue that the sanctions imposed were excessive in light of the violations found. We reject these contentions for the reasons outlined below.

### A. *The Findings of Violations*

All-or-nothing underwritings were developed in order to provide buyers with somewhat greater security in the purchase of risky offerings. The all-or-nothing provision serves not only to ensure that the issuing firm has sufficient funds to complete its project, but also to give investors some reasonable indication that they are paying a fair market price for their investment. Closing an all-or-none offering before the required minimum number of shares has been sold *to the public* is therefore fraudulent. This point was aptly explained by the First Circuit in *A.J. White & Co. v. SEC:* "[I]n ... an offering of shares in a new company, one of the investors' major concerns will be whether the price they are paying for the securities is a fair market price. The inability of the underwriter to sell the specified minimum to bona fide investors may well indicate that the market judges the offering price to be too high." 556 F.2d at 623.

▪ It is not seriously disputed that petitioners purchased the SanAnCo stock for the purpose of closing the underwriting; indeed, petitioners' briefs basically admit as much. *See, e.g.*, Svalberg Brief at 5, 12. The mere fact that petitioners retained their stock rather than selling it immediately did not ameliorate the damage done outside investors who lost an assurance that a given number of other *outside investors* shared their assessment of the stock's value. Even if petitioners purchased the stock partially as an investment and partially to close the offering, this still distorted the information available to the public about the quality of the offering. A principal who purchases with mixed motives may be willing to pay more than a reasonable price to ensure the success of the offering; whereas outside investors normally will buy the stock *only* for *bona fide* investment reasons. In this case, petitioners acted to create a false impression that the required minimum number of shares had been sold to the public; therefore, their purchases of SanAnCo with a purpose of closing the underwriting simply cannot be viewed as *bona fide* investments.

▪ It is also clear that petitioners' failure to inform investors that stock could be purchased by persons associated with the

---

**1.** Section 25(a)(4), 15 U.S.C. § 78y(a)(4), provides that "[t]he findings of the Commission as to the facts, if supported by substantial evidence, are conclusive."

underwriter is "material" to the charges against them. "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important" in making a decision regarding the stock. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Petitioners contend that the number of shares they purchased (*i.e.*, less than seven percent of the minimum offering) was too small to be material. But this argument misses the point. Petitioners' stock purchases were made in the face of what they believed to be a deteriorating market; their actions were material because they purchased the final unsold block of securities with a purpose and effect of *closing* what appeared to be a weak underwriting. No matter the amount of stock petitioners purchased, shareholders clearly would consider it "important" that principals were acting on their own to close what appeared to be a weak underwriting.

■ Petitioners' final argument that they lacked the requisite scienter is also flawed. In the context of this case, scienter does not mean that the subject believed his action to be illegal. Rather, "[a] knowledge of what one is doing and the consequences of those actions suffices." *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 77 (D.C.Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 569, 66 L.Ed.2d 471 (1980). Petitioners acted as licensed professionals in the securities field, and they certainly knew—as the SEC found—that they were "closing the SanAnCo offering although the required minimum had not been sold to the public," *Lippitt*, 48 S.E.C. at 526, and that this was contrary to the representations they had made in their prospectus.

Thus, we find that petitioners' stock purchases were not *bona fide* investments, that their nondisclosure of this information was material, and that they had the necessary scienter to support the violations found. Accordingly, we can find no basis upon which to overturn the SEC's judgment that petitioners violated the NASD Rules of Fair Practice.

B. *The Propriety of the Sanctions*

Nor can we find any reason to overturn the sanctions imposed by the SEC. The determination of an appropriate remedy is a matter the Supreme Court has recognized to be "peculiarly a matter for administrative competence." *American Power & Light Co. v. SEC*, 329 U.S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946) (quoting *Phelps Dodge Corp. v. National Labor Relations Bd.*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941)). Thus, an agency's choice of remedies generally is not to be overturned unless the reviewing court finds that it is unwarranted in law or without justification in fact. *See Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973). In reviewing sanctions imposed by the NASD and affirmed by the SEC, this court has made it clear that "[w]e will not lightly disturb the findings of [the Commission] in its area of expertise." *Seaton v. SEC*, 670 F.2d 309, 311 (D.C.Cir. 1982) (per curiam).

■ Here, we find no evidence that the SEC abused its discretion in affirming the NASD sanctions. The petitioners object to the fact that the Commission set aside one of the violations found by the NASD and yet adopted all of the recommended sanctions. However, the Commission was fully aware of what it was doing, finding that petitioners' misconduct was "very serious," and that the sanctions were not excessive even in view of the fact that one violation was set aside. *Lippitt*, 48 S.E.C. at 528. As our sister circuits have noted, such findings are adequate to support sanctions of the sort imposed in this case. *See Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875, 879 (7th Cir.1985); *Sartain v. SEC*, 601 F.2d 1366, 1374 (9th Cir.1979).

■ Petitioners also challenge the amount of the fine ($15,000) that the SEC imposed on each of them. They point to Article V, § 1, of the NASD Rules of Fair Practice, which, at the time of the violations, provided that the NASD could, *inter alia*, "impose a fine not in excess of Five Thousand Dollars ($5,000.00) ... for each

or any violation of any of these Rules." [2] Petitioners argue that because the SEC found them guilty of only one violation, no fine against either of them could exceed $5000.[3] We disagree.

SEC precedent establishes that, when NASD rules have been breached, a separate violation occurs in connection with each securities sale. *See, e.g., Philip S. Sirianni*, 47 S.E.C. 355, 359 n. 13 (1980), *aff'd*, 677 F.2d 1284, 1289 (9th Cir.1982); *First Philadelphia Corp.*, 45 S.E.C. 73, 74 (1972), *aff'd*, 46 S.E.C. 1153 (1978). In the instant case, the specific charges against petitioners focused not on their purchases of SanAnCo stock, but, rather, on their failures "to return subscribers' funds in accordance with the terms of the SanAnCo prospectus." *Lippitt*, 48 S.E.C. at 526. As charged, therefore, the SEC found a separate violation for each subscriber. In light of the precedent on this point, the Commission's interpretation of the NASD rule is not unreasonable.[4]

■ Finally, we reject petitioners' claim that the lifetime bans against their serving as principals in any NASD member firm are *de facto* excessive. The Commission has charged, and has proven by substantial evidence on the record as a whole, that petitioners were responsible for serious violations of the securities laws. It was within the reasonable discretion of the SEC to conclude that protection of the public interest required barring petitioners from further activities as principals. Indeed, this sanction is not significantly more onerous than other SEC sanctions that have been approved by reviewing courts. *See, e.g., Berdahl v. SEC*, 572 F.2d 643, 649 (8th Cir.1978) (affirming SEC bar on securities broker-dealer from associating in any way with any broker or dealer for a period of nine months, after which he might apply to the Commission for permission to become associated with a broker or dealer in a nonsupervisory capacity only). The main point is that a court should not second-guess the judgment of the Commission in connection with the imposition of sanctions, unless the SEC has acted contrary to law, without basis in fact or in abuse of discretion. Petitioners have failed to show any such infirmity in this case.

### III. CONCLUSION

The petitions for review of the decision of the Securities and Exchange Commission are denied.

*So ordered.*

**2.** In 1984, the maximum fine was increased to $15,000. *See* Svalberg Appendix at 89–90.

**3.** The SEC contends that the court is without authority to consider petitioners' claims that their fines are excessive, because this matter was never raised with the Commission. On this point, the SEC cites section 25(c)(1) of the Act, 15 U.S.C. § 78y(c)(1) (1982), which provides that "[n]o objection to an order or rule of the Commission ... may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so."

Without deciding the matter, we note that an argument might be advanced that the failure to raise this issue below could be excused on "reasonable ground[s]" because at least one of the petitioners was not represented by counsel at the hearing before the SEC. However, because we find that the fines imposed are not excessive, it is unnecessary for us to reach the question whether petitioners had a "reasonable ground for failure" to raise the issue below.

**4.** Svalberg's reliance on *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), for the proposition that "a single course of conduct pursuant to one managerial decision is one offense," Svalberg Brief at 16, is totally misplaced. That decision interpreted the Fair Labor Standards Act, and its conclusion was based on an interpretation of that specific statute rather than on any general principles. *See* 344 U.S. at 221, 73 S.Ct. at 229.