United States Court of Appeals,

Fifth Circuit.

No. 93-1423.

BANC ONE CAPITAL PARTNERS CORPORATION, et al., Plaintiffs-Appellants, Cross-Appellants,

v.

Richard K. KNEIPPER and Jones, Day, Reavis & Pogue, Defendants-Appellees, Cross-Appellants.

Nov. 3, 1995.

Appeals from the United States District Court For the Northern District of Texas.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and BERRIGAN, District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

A group of disgruntled investors filed this suit for securities fraud arising out of the defendants' failed efforts to successfully capitalize FilmDallas, Inc. ("FilmDallas"), a Dallas-based movie production company. After a five-week trial, the jury returned a verdict against the plaintiff investors on their federal and Texas state securities fraud claims, but in favor of the plaintiffs on their claim of civil conspiracy. The jury also found that two of the investors were *in pari delicto* with the defendants.

The district court disregarded the jury's civil conspiracy verdict and entered a "take nothing" judgment in favor of the defendants, reasoning that there was no "wrongdoing" upon which a

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

finding of civil conspiracy could be based. The plaintiffs appeal from this judgment and from the district court's grant of summary judgment on their claims for professional negligence and legal malpractice. The defendants appeal from the district court's denial of their summary judgment motion in which they asserted the defense of res judicata. We reverse in part, affirm in part and remand for new trial.

I

The defendant Richard K. Kneipper was chairman of the Board of Directors and an officer in FilmDallas when the private offering of securities in FilmDallas was made. He was also a partner in the defendant law firm Jones, Day, Reavis & Pogue ("Jones Day"), which served as counsel to FilmDallas for the offering.

Kneipper and Sam Grogg,[1] a film industry veteran, had formed FilmDallas in 1986 to participate in a joint enterprise agreement with New World Company Pictures, Inc. ("New World"), an independent film producer and distributor. FilmDallas and New World together would own FilmDallas Pictures, Inc. ("FilmDallas Pictures"), which was to produce and distribute films and would be managed by FilmDallas. Under the joint venture agreement, FilmDallas and New World were each required to contribute to the capitalization of the venture.

Because the resources of Kneipper and Grogg fell short of the

---

[1]Grogg was named as a defendant in the original complaint, but the plaintiffs later voluntarily dismissed him from the suit. While evidence of Grogg's involvement in the alleged fraudulent activity was presented at trial, the only two defendants in this case are Kneipper and Jones Day.

2

needed contribution, they decided to fund FilmDallas' portion through the private offering in FilmDallas. Kneipper and Jones Day prepared a private offering memorandum which detailed the proposal. According to the terms of that memorandum, the proposed offering was on an "all or none" basis: if a minimum of $7.5 million was not raised and deposited in escrow by December 15, 1986, all the money would be returned to the investors.

MVenture/Banc One was the first plaintiff to invest when its board approved a $1 million investment in November 1986, based on a draft of the private offering memorandum. By December, FilmDallas Pictures was already up and operating on loans from New World and contributions from Kneipper and Grogg. At this point, the private offering had not received the required $7.5 million commitment, and Kneipper and Grogg were forced to negotiate an extension on the deadline set forth in the private offering memorandum and an extension on the joint venture deadline with New World.

In early 1987, the plaintiffs C.A. Rundell, William R. Johnson, James A. Bancroft and Thomas and Luanne Tierney also agreed to invest. FilmDallas, however, was still far short of the mark required under the terms of the private offering memorandum. Kneipper was pursuing a $1.2 million investment from a Swiss investor, Geoffrey Jurick, who owned an office building in Dallas, but by early March 1987 there was still no final agreement. After consenting to a series of extensions, the investors eventually issued an ultimatum that they would withdraw unless the offering

3

was by March 18, 1987.

The claims of fraud and conspiracy are based on Kneipper and Grogg's responses to the concerns of the investors during the early months of 1987. The gist of the fraud was defendants' alleged failure to disclose material information at the time it became known to them. The substance and significance of the information was not seriously disputed at trial. Instead, the trial focused on when the information became known to the defendants. The plaintiffs claimed that the misrepresentations and omissions occurred at a time when they could have withdrawn their investments, while the defendants contended that the information became known at a later date when they no longer owed a duty to disclose.

The first material misrepresentation involved defendants' failure to disclose a rent escrow agreement on Jurick's Dallas property, which effectively reduced his net contribution by approximately $500,000. The second involved multiple representations made in order to induce the investors to agree to lower the private offering minimum to $7 million. For example, Kneipper and Grogg represented that New World, out of enthusiasm for the joint venture, had agreed to invest up to $500,000 in the FilmDallas private offering, in addition to its one-half contribution to FilmDallas Pictures. In actuality, New World required the two of them to personally sign a repurchase agreement

4

for the FilmDallas stock.[2]

After FilmDallas represented to the investors that final commitments for the $7 million had been reached as of March 18, 1987, the "closing" or "pre-closing," as it was variously referred to at trial, took place that day in a meeting at the offices of Jones Day. In connection with the closing, Jones Day issued an opinion letter stating that all of FilmDallas' material contracts and agreements had been disclosed. On April 21, 1987, all of the signed subscriptions had been received and the escrow agent finally released the funds. FilmDallas subsequently failed, and the plaintiffs lost their entire investment.

## II

The investors contend that the charge given to the jury on the securities fraud claims was defective in several respects. We address the one contention that is central to the dispute at trial regarding when information became known to the FilmDallas officers. The investors assert that the district court erred by giving an incorrect instruction on "materiality"[3] in the context of an "all

---

[2]The rent escrow agreement between FilmDallas and Jurick was finalized in writing on April, 10, 1987. The written agreement by Kneipper and Grogg to repurchase the New World stock was dated May 8, 1987. Plaintiffs alleged, however, that these agreements were in fact reached well in advance of the writings.

[3]One of the elements of a securities fraud claim is a *material* misrepresentation or omission by the defendant. *Stephenson v. Paine, Webber, Jackson & Curtis, Inc.,* 839 F.2d 1095 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 328 (1988); *Gant v. State,* 814 S.W.2d 444 (Tex.App.—Austin 1991, no writ). In a Section 10(b) claim, "[A]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.,*

or nothing" offering of securities.

While great latitude is shown the trial court in fashioning jury instructions, we will review them to determine whether they accurately and completely state the law. "[A] trial court has a duty to instruct the jurors, fully and correctly, on the applicable law of the case." *Horton v. Buhrke,* 926 F.2d 456, 460 (5th Cir.1991); *see also EEOC v. Manville Sales Corp.,* 27 F.3d 1089, 1096 (5th Cir.1994) (upholding charge only if it does not mislead, prejudice, or confuse jury), *cert. denied,* --- U.S. ----, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995); *FDIC v. Wheat,* 970 F.2d 124, 130 (5th Cir.1992) ("Appellate review looks to whether the instruction accurately states the law, and does not mislead the jury.").

The district court gave the following instruction on "materiality" in conjunction with the federal and Texas state securities fraud claims:

> For each plaintiff, the date on which the materiality of a fact is to be determined is the date when that plaintiff committed to purchase his FilmDallas securities. Materiality is not determined as of any later date, such as, for example, the formal closing date. To determine whether a violation occurred, you are to look at the date or dates when each plaintiff committed himself to invest in FilmDallas. After such date, disclosure of later-learned information is not required, because the investment decision has already been made.

This instruction was derived from *Radiation Dynamics, Inc. v.*

---

426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed. 757, 766 (1976). The issue of whether a fact is material as a matter of law will also turn on, as discussed below, whether the defendant has a duty to disclose.

*Goldmuntz,* 464 F.2d 876 (2d Cir.1972).[4] The investors contend that this instruction is erroneous in the context of an "all or none" securities offering because it does not acknowledge that their "commitment" was contingent in nature.

We have previously examined the issue of an ongoing duty to disclose in the context of a contingent commitment. *See Stier v. Smith,* 473 F.2d 1205 (5th Cir.1973). The plaintiff investor in *Stier* had made the negotiation of his check tendered for payment of the stock contingent on the defendant making a successful public offering. *Id.* at 1209. The plaintiff claimed the defendant owed a continuing duty to disclose material information concerning the public offering until it was completed. We agreed, holding that whether or not the sale was finalized with the tender was irrelevant where the sale was subject to the condition that the public offering occur and the defendant knew the plaintiff was relying on the success of the public offering. *Id.* at 1209-10.

An "all or none" offering involves a similarly contingent commitment by the investor. If the offering minimum is not raised and deposited in escrow by a given date, all the money previously "committed" will be returned to the investors.[5] This type of

---

[4]*See id.* at 890 (" 'Commitment' is a simple and direct way of designating the point at which, in the classical contractual sense there was a meeting of the minds of the parties; it marks the point at which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time.").

[5]Rule 10b-9(a) under the Securities and Exchange Act provides:

> (a) It shall constitute a *manipulative or*

7

offering was designed to protect the investor in a number of ways. "The all-or-nothing provision serves not only to ensure that the issuing firm has sufficient funds to complete its project, but also to give investors some reasonable indication that they are paying a fair market price for their investment." *Svalberg v. SEC,* 876 F.2d 181, 183 (D.C.Cir.1989). The sellers cannot avoid the requirements of this provision by fraudulently creating the impression that the minimum has been met. *See C.E. Carlson, Inc. v. SEC,* 859 F.2d 1429, 1434 (10th Cir.1988) ("Once the part or none representation has been made, it may not be circumvented by

> *deception device or contrivance,* as used in section 10(b) of the Act, for any person, directly or indirectly, in connection with the offer or sale of any security, to make any representation:
>
> (1) To the effect that the security is being offered or sold on an "all or none" basis, unless the security is part of an offering or distribution being made on the condition that all or a specified amount of the consideration paid for such security will be promptly refunded to the purchaser unless (i) all of the securities being offered are sold at a specified price within a specified time, and (ii) the total amount due to the seller is received by him by a specified date; or
>
> (2) To the effect that the security is being offered or sold on any other basis whereby all or part of the consideration paid for any such security will be refunded to the purchaser if all or some of the securities are not sold, unless the security is part of an offering or distribution being made on the condition that all or a specified part of the consideration paid for such security will be promptly refunded to the purchaser unless (i) a specified number of units of the security are sold at a specified price within a specified time, and (ii) the total amount due to the seller is received by him by a specified date.

17 C.F.R. § 240.10b-9(a).

transactions primarily designed to create the appearance of a successful offering in order to avoid the refund feature of the offering.").[6]

Therefore, relying on *Stier,* we hold that the seller in an "all or none" offering *does* have a continuing duty to inform investors of facts which affect contingent events after their initial commitment to invest. *See Stier,* 473 F.2d at 1209 (investors should have been informed that corporation was using part of the proceeds of the "public offering" to purchase its own shares); *see also SEC v. National Student Marketing Corp.,* 457 F.Supp. 682, 704 (D.D.C.1978) ("It is not some magical incantation of "commitment' that sets the point at which disclosure is no longer mandated, but rather the nature of the commitment."). As applied to the all or none offering by FilmDallas, the district court's materiality charge given on the federal and state securities claims was erroneous.

This error, however, does not require retrial if, based on the entire record, the challenged instruction could not have affected the outcome of the case. *FDIC v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994). Reversal is appropriate whenever the charge "as a whole leaves us with substantial and ineradicable doubt

---

[6]*See also SEC v. Coven,* 581 F.2d 1020, 1028-29 (2d Cir.1978) (holding that the failure to comply with terms of escrow agreement and the closing prior to the bona fide sale of the minimum number of shares plainly operated as a fraud upon the public); *A.J. White & Co. v. SEC,* 556 F.2d 619, 622-23 (1st Cir.) (holding that it was fraudulent where the minimum amount was raised through short-term bank loans rather than bona fide sales to investors), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977).

whether the jury has been properly guided in its deliberations."
*Bender v. Brumley,* 1 F.3d 271, 276 (5th Cir.1993); *Bommarito v. Penrod Drilling Corp.,* 929 F.2d 186, 189 (5th Cir.1991); *Treadaway v. Society Anonyme Louis-Dreyfus,* 894 F.2d 161, 167-68 (5th Cir.1990).

In this case, the erroneous materiality charge allowed the defendants to argue that the investors had made their "commitments to purchase" well prior to the closing date and breaking of escrow. For example, the jury would have had to conclude that MVenture/Banc One made its commitment to purchase when the board approved the investment in November 1986. Therefore, because of the instruction, even if the jury believed the allegations of misrepresentations and omissions in early 1987 regarding whether the offering minimum had been reached, they would have been forced to disregard this evidence as immaterial. According to the jury charge, the defendants had no ongoing duty to inform the investors once they made their "commitment to purchase." For these reasons, we believe that there is a substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Because it could have affected the outcome of the case, we remand for new trial.[7]

---

[7]The investors allege two additional claims of error. They contend that the district court committed plain error in its jury charge by inserting a requirement of privity into the claim of aider and abetter liability under Texas law. They also contend that the court erred by omitting their requested instruction on control person liability. Because we have already determined that the erroneous instruction on "materiality" requires that we remand the securities fraud claims for a new trial, we do not need to reach these issues.

# III

The investors also contend that the district court erred by disregarding the jury's verdict in favor of plaintiffs on the claim of civil conspiracy because of the findings in favor of the defendants on the "substantive" federal and state securities claims. The investors assert that the district court erred as a matter of law, as there was substantial evidence to support the jury's finding on the civil conspiracy claim.

The district court charged the jury on civil conspiracy as follows:

> Plaintiffs' next claim is that the defendants conspired to violate the law at plaintiffs' expense. In order to find that the defendants engaged in a civil conspiracy with respect to conduct surrounding the FilmDallas, Inc. securities offering, a Plaintiff must prove by a preponderance of the evidence that:
>
> (1) two or more persons;
>
> (2) had an object to be accomplished;
>
> (3) that there was a meeting of the minds on the subject or course of action;
>
> (4) that there was one or more unlawful acts; and
>
> (5) that the Plaintiff was damaged as a proximate result thereof.

These elements have been recognized by this Court and the Texas Supreme Court. *See Meineke Discount Mufflers v. Jaynes,* 999 F.2d 120, 125 (5th Cir.1993); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983); *see also Bernstein v. Portland Sav. & Loan,* 850 S.W.2d 694, 705 (Tex.App.—Corpus Christi 1993, no writ); *Times Herald Printing v. A.H. Belo Corp.,* 820 S.W.2d 206, 216 (Tex.App.—Houston [14th Dist.] 1991, no writ).

11

Under Texas law, civil conspiracy is defined as a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Fenslage v. Dawkins,* 629 F.2d 1107, 1110 (5th Cir.1980); *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995); *Great National Life Insurance Co. v. Chapa,* 377 S.W.2d 632, 635 (Tex.1964). In order for liability to attach, "there must be an unlawful, overt act in furtherance of the conspiracy." *Massey,* 652 S.W.2d at 934 (holding that plaintiff did not state a cause of action for civil conspiracy where none of the overt acts alleged were unlawful); *International Bankers Life Ins. v. Holloway,* 368 S.W.2d 567, 581 (Tex.1963) (civil conspiracy "consists of acts which would have been actionable against the conspirators individually").

In its Final Judgment, the district court entered a "take nothing" judgment[8] against the investors on the grounds that:

> [I]n order for a finding of civil conspiracy to be properly supported, a defendant must have been found liable for an unlawful act separate and independent from a conspiracy. The jury specifically found that neither Jones, Day nor Richard K. Kneipper committed securities fraud under either the federal

---

[8] Rule 50(a) states:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a).

> or state securities laws. There was therefore no "unlawful act" that could support a finding of civil conspiracy, and defendants are therefore entitled to judgment....

Inasmuch as the district court's judgment may reflect a belief that a finding of civil conspiracy is dependent on a *separate finding of liability* on a substantive count, the court was in error. A finding of civil conspiracy does require, however, that the plaintiff be able to *plead and prove* "one or more wrongful, overt acts" in furtherance of the conspiracy that would have been actionable against the conspirators individually. *Massey,* 652 S.W.2d at 934; *Selig v. BMW of North America, Inc.,* 832 S.W.2d 95 (Tex.App.—Houston [14th Dist.] 1992, writ dism'd w.o.j.).[9] Therefore, even if the plaintiff does not bring a separate cause of action for the underlying wrongful conduct, he must be able to prove the elements of the wrongful conduct. *See Selig,* 832 S.W.2d at 95 (civil conspiracy claim precluded where plaintiffs were collaterally estopped from relitigating central issue of false testimony); *Kale v. Palmer,* 791 S.W.2d 628, 633 (Tex.App.—Beaumont 1990, writ denied) (holding that civil conspiracy claim did not lie where plaintiffs had failed to plead special damages as required under Texas law in an action for defamation based on oral statements).[10]

---

[9]*See also Metzger v. Sebek,* 892 S.W.2d 20, 44 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (directed verdict against plaintiff proper where record does not reflect any unlawful, overt acts in furtherance of the conspiracy).

[10]The requirement that plaintiff plead and prove one or more unlawful, overt acts also follows from the fact that "the gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself."

13

In this case, the only "unlawful acts" submitted for the jury's consideration were the federal and Texas state securities fraud claims.[11] There is simply no evidence in the record that any other unlawful acts were pleaded and proven at trial. Therefore, if the jury had been properly charged with the securities fraud claims, the district court would have been correct in concluding that there was no basis for sustaining the civil conspiracy verdict in light of the jury's finding against the investors on these claims. However, because we have determined that the jury instruction on "materiality" was erroneous, we also remand the investors' civil conspiracy claim. If properly instructed on the securities fraud claims upon retrial, the jury may find that there was a securities law violation and thereby provide the necessary basis for sustaining a new civil conspiracy verdict.

In addition, we believe that the jury instruction on civil conspiracy was defective because it is overly broad. "[A] general jury verdict [is] valid [only] so long as it was *legally*

_____

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968); *accord Ross v. Arkwright Mutual Ins. Co.,* 892 S.W.2d 119, 132 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Nautical Landings Marina v. First Nat'l,* 791 S.W.2d 293, 299-300 (Tex.App.—Corpus Christi 1990, writ denied); *see also Weakly v. East,* 900 S.W.2d 755, 759 (Tex.App.—Corpus Christi 1995, no writ) ("A civil conspiracy requires ... one or more overt, unlawful acts committed in furtherance of the conspiracy which results in damages."); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 487 (Tex.App.—Corpus Christi 1989, writ denied) (civil conspiracy judgment reversed where "neither party to the alleged agreement took any unlawful, overt acts against [the plaintiff] causing damages as a proximate result").

[11]Although the investors requested instructions on statutory and common law fraud, neither of these issues was submitted to the jury.

14

supportable on one of the *submitted* grounds."  *Griffin v. United States,* 502 U.S. 46, 49, 112 S.Ct. 466, 469, 116 L.Ed.2d 371 (1991) (emphasis added).  Thus, we have reversed and granted a new trial when the charge "failed to present [a] critical issue,"[12] incorrectly explained the applicable law,[13] allowed the jury to make findings on issues outside those on which pretrial order and charge allowed proof,[14] or failed to resolve a critical underlying question of fact.[15]  In each of these cases, we concluded that the charge as a whole was "insufficient to resolve the remaining factual issues." *Tex-Goober Co. v. Los Angeles Nut House, Inc.,* 803 F.2d 1358, 1362 (5th Cir.1986).

This case suffers the same flaws for which we have reversed and granted new trials.  The civil conspiracy instruction fails to

---

[12]*Turnage v. General Elec. Co.,* 953 F.2d 206, 212 (5th Cir.1992);  *see also Barton's Disposal Serv., Inc. v. Tiger Corp.,* 886 F.2d 1430, 1436-37 (5th Cir.1989) (reversing charge that did not present critical issue of fact to the jury, even though verdict implied legally sufficient alternate findings).

[13]*See Horton,* 926 F.2d at 461 (reversing charge that confused several theories of recovery);  *Bode v. Pan Am. World Airways, Inc.,* 786 F.2d 669, 672 (5th Cir.1986) (reversing charge that "did not adequately inform the jury of the [pertinent state] law").

[14]*See Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1299-1300 (5th Cir.1988) (rejecting request to uphold verdict if it was "a logical and probable decision on the issue as submitted," because court could not say "that the jury was clearly not misled"), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989);  *see also In re Air Crash Disaster at New Orleans,* 795 F.2d 1230, 1235-36 (5th Cir.1986) (reversing charge that "masked" extent to which jury made permissible or impermissible findings).

[15]*Tex-Goober Co. v. Los Angeles Nut House, Inc.,* 803 F.2d 1358, 1362 (5th Cir.1986).

limit the jury solely to "unlawful acts" pleaded, proven and submitted—the federal and state securities violations.  Other than defining the securities violations, the charge failed to define any other unlawful acts.  Accordingly, the jury was left without a definition of "unlawful acts" and may have based their civil conspiracy finding on acts with which they disagreed, whether unlawful or not.  Even if we were to conclude that the evidence is sufficient to sustain a correct charge of securities fraud, as an appellate court we cannot supply the missing jury findings on these claims.[16]  For these reasons, we believe that there is a " "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations' " on this issue as well. *F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994) (quoting

---

[16]"We afford trial judges wide latitude in fashioning jury instructions and ignore technical imperfections," *Bender v. Brumley,* 1 F.3d 271, 276 (5th Cir.1993); *accord P & L Contractors, Inc. v. American Norit Co.,* 5 F.3d 133, 137-38 (5th Cir.1993), and, as an appellate court, we review the effectiveness of the trial court's charge for *abuse of discretion* only.  *Barton's Disposal Serv., Inc.,* 886 F.2d at 1435; *cf. P & L Contractors, Inc.,* 5 F.3d at 138 ("The district court is in the best position to analyze the jury's intentions and thus is charged, in the first instance, with the obligation of giving effect to those intentions in light of the surrounding circumstances."  (emphasis added)).

Indeed, because the defendants objected to the overbreadth of the instruction for its failure to define "unlawful acts," even the *district court* may not have had the authority to make a finding on that issue. *See MBank Fort Worth v. Trans Meridian, Inc.,* 820 F.2d 716, 723-24 (5th Cir.1987) (allowing court to make finding under Rule 49(a) only if submission of issue to jury not requested); *Taherzadeh v. Clements,* 781 F.2d 1093, 1098 (5th Cir.1986) ("If objection is made for failure to submit an issue, the district judge has no authority to make an express finding under Rule 49(a) concerning that same issue.").

*Bender v. Brumley,* 1 F.3d 271, 276-77 (5th Cir.1993)); *accord Bommarito v. Penrod Drilling Corp.,* 929 F.2d 186, 189 (5th Cir.1991).

IV

The investors MVenture/Banc One and Rundell challenge the sufficiency of the evidence to sustain the jury's finding that they were *in pari delicto*[17] with the defendants. *Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806 (5th Cir.), *cert. denied,* 504 U.S. 956, 112 S.Ct. 2304, 119 L.Ed.2d 226 (1992); *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc) (applying a substantial evidence test). The jury answered "yes" to Question No. 7, "Have the defendants proved by a preponderance of the evidence that the plaintiffs [MVenture/Banc One and Rundell] were *in pari delicto* in connection with any alleged wrongdoing for which plaintiffs seek damages?"[18]

---

[17]This common law defense "derives from the Latin, *in pari delicto potior est conditio defendentis:* "In a case of equal or mutual fault ... the position of the [defending] party ... is the better one.' " *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 306, 105 S.Ct. 2622, 2626, 86 L.Ed.2d 215 (1985) (quoting Black's Law Dictionary 711 (5th ed. 1979)).

[18]The district court gave the following instruction on the *in pari delicto* defense:

> "*In pari delicto*" means "in equal fault." A plaintiff is *in pari delicto* where, as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the wrongdoing for which he now seeks damages. A party is also *in pari delicto* where he is an active participant in a fraudulent or deceptive scheme or an illegal contract.

The investors objected to this instruction at trial on the grounds that it did not require that the plaintiff have participated in the frauds about which they complained.

17

The Supreme Court has held that the *in pari delicto* defense may operate as a bar to private causes of action for damages under the federal securities laws. *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). The Court held that an action "may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Id.* at 310-11, 105 S.Ct. at 2629. The *Bateman Eichler* test requires that the plaintiff "be an active, voluntary participant in the unlawful activity that is the subject of the suit." *Pinter v. Dahl,* 486 U.S. 622, 636, 108 S.Ct. 2063, 2072, 100 L.Ed.2d 658 (1988).

The test under Texas law for determining whether the *in pari delicto* defense applies does not appear to be contrary. *See Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947) (stating that the rule's application is a matter of public policy). One test relied on by Texas courts "is whether the plaintiff requires any aid from the illegal transaction to establish his case." *Id.* 199 S.W.2d at 151; *see also Plumlee v. Paddock,* 832 S.W.2d 757, 759 (Tex.App.—Fort Worth 1992, writ denied) ("[C]ourts have required parties who wish to recover on an illegal contract prove their case without reliance on their own illegal act."). "[I]n determining whether plaintiff requires aid from the illegal transaction to

18

establish his case," it is "necessary to bear in mind the rule that if a party can show a complete cause of action without being obliged to prove his own illegal act, although said illegal act may appear incidentally and may be important in explanation of other facts in the case, he may recover." *Norman v. B.V. Christie & Co.,* 363 S.W.2d 175, 177-78 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.).

Upon review of the record, we cannot conclude that the evidence, if viewed in the light most favorable to the defendants, would be insufficient as a matter of law to sustain a jury finding of *in pari delicto.* Nevertheless, because we find that the district court's erroneous jury charge on the substantive counts of securities fraud and civil conspiracy mandates that we remand these issues for retrial, we must also remand the issue of whether MVenture/Banc One and Rundell were *in pari delicto* with the defendants in this case. The defense of *in pari delicto* clearly requires that the jury be properly instructed on the scope of the underlying illegal actions being alleged before it can determine whether the two investors bear "at least substantially equal responsibility" for the illegal actions, or whether the investors can prove the cause of action without also having to prove their own illegal acts. It is not enough for the jury to conclude that the investors were active participants in some wrongdoing with the defendants.[19] Rather, the wrongdoing must be the same wrongdoing

_____

[19]We also believe that there is a risk in this case that the jury was misled by the last part of the district court's *in pari delicto* instruction: "A party is also *in pari delicto* where he

19

for which the investors are seeking to recover damages.  Therefore, the jury instructions on this issue as a whole failed to adequately guide the jury in their deliberations.  *See, e.g., Stine v. Marathon Oil Co.,* 976 F.2d 254, 261 (5th Cir.1992) (reversing and remanding for new trial with proper jury instructions).

V

Finally, we must address appeals from two separate motions for summary judgment.  The investors appeal the district court's grant of summary judgment in favor of defendants Kneipper and Jones Day on the issue of professional negligence and legal malpractice.  The defendants appeal the district court's denial of their motion for summary judgment asserting the defense of res judicata.

This court reviews summary judgment *de novo.  Alexander v. U.S.,* 44 F.3d 328, 330 (5th Cir.1995);  *Ackerman v. F.D.I.C.,* 973 F.2d 1221, 1223 (5th Cir.1992).  We review a district court's grant of summary judgment by applying the same standard employed by the district court in ruling on the motion.  *Alexander,* 44 F.3d at 330; *Samaad v. City of Dallas,* 940 F.2d 925, 937 (5th Cir.1991).  A summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S.

___

is an active participant in a fraudulent or deceptive scheme or an illegal contract."  On the basis of this instruction, the jury may have improperly considered evidence that *subsequent* to the offering the two investors participated in the sale of interim notes and percentages of FilmDallas when they had knowledge about the allegedly fraudulent activity.  Unless these subsequent activities were a part of the underlying illegal activity, or were a necessary part of the two investors' proof, they were not relevant to a finding of *in pari delicto.*

20

317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the evidence and inferences must be viewed in the light most favorable to the nonmoving party. *Taylor v. Gregg,* 36 F.3d 453, 455 (5th Cir.1994). The dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A

The investors make two general assertions in support of their professional negligence and legal malpractice claims against Kneipper and Jones Day. First, the investors argue that Jones Day, and Kneipper as a partner of the law firm, entered into a "limited" attorney-client relationship with the investors by agreeing to represent them for the purpose of issuing an opinion letter in connection with the FilmDallas securities offering. Alternatively, the investors claim that Jones Day and/or Kneipper had a duty to advise them that their interests were not being represented in a situation where they were reasonably led to believe otherwise.

In order to establish liability for professional negligence or legal malpractice, the investors must show the existence of a duty owed to them by Jones Day and/or Kneipper, a breach of that duty, and damages arising from the breach. *Yaklin v. Glusing, Sharpe & Krueger,* 875 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1994, no writ). Under Texas law, there is no attorney-client relationship absent a showing of privity of contract, and an

21

attorney owes no professional duty to a third party or non-client. *Parker v. Carnahan,* 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied); *First Mun. Leasing Corp. v. Blakenship, Potts, Aikman, Hagin and Stewart,* 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *F.D.I.C. v. Howse,* 802 F.Supp. 1554, 1563 (S.D.Tex.1992). The attorney-client relationship is viewed as a contractual relationship in which the attorney agrees to render professional services on behalf of the client. *Yaklin,* 875 S.W.2d at 383; *Parker,* 772 S.W.2d at 156. The attorney-client relationship can be formed by explicit agreement of the parties or may arise by implication from the parties' actions. *Yaklin,* 875 S.W.2d at 383; *Parker,* 772 S.W.2d at 156.

In the present case, the investors argue first that Jones Day and/or Kneipper manifested their intent to create a limited attorney-client relationship by voluntarily issuing the opinion letter in connection with the FilmDallas securities offering. Although the attorney-client relationship can be implied, courts will not readily impute the contractual relationship absent a sufficient showing of intent. *See Parker,* 772 S.W.2d at 156 (holding that husband's attorneys did not have attorney-client relationship with wife even though the wife met with attorneys and signed documents in their offices).[20] We do not believe that the

---

[20]*See also Dickey v. Jansen,* 731 S.W.2d 581, 582 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (concluding that testamentary beneficiaries could not maintain a cause of action against attorney who negligently drafted will due to lack of privity); *F.D.I.C. v. Howse,* 802 F.Supp. at 1563 (finding that a lack of privity prevented bank directors from obtaining indemnity from the law firm which had handled the

opinion letter issued by Jones Day and/or Kneipper evidences an intention to form an attorney-client relationship. *Cf. First Mun. Leasing Corp.,* 648 S.W.2d at 413 (concluding that law firm which issued opinion letter regarding the validity of a contract owed no duty to a third-party corporation due to lack of privity).

The investors next argue that the final paragraph of the opinion letter indicated that Jones Day was rendering professional services directly to the individual investors:

> This opinion is furnished by us, as counsel for the company, to you, solely for your benefit, and we are not hereby assuming any professional responsibility to any other person whatsoever.

Despite the investors' arguments,[21] however, we read this paragraph to name Jones Day as counsel for FilmDallas solely, disclaiming any professional responsibility for any other persons, including the investors. Although unartfully drafted, the opinion letter does not manifest an intent to create an attorney-client relationship. To the contrary, the disclaimer is an obvious attempt to avoid an inadvertent creation of such a relationship.

We hold as a matter of law that a reasonable jury could not find that the parties manifested an intent to create an attorney-client relationship. Therefore, the investors' first argument cannot sustain a cause of action for professional

---

bank's affairs).

[21]The investors also argue that this case is distinguishable because the opinion letter was addressed directly to the individual investors. We find no significance in this distinction, however, and do not believe that it supplies any additional showing of intent to form an attorney-client relationship.

negligence or legal malpractice. *See Parker,* 772 S.W.2d at 156; *First Mun. Leasing Corp.,* 648 S.W.2d at 413.

The investors also claim that Jones Day and/or Kneipper had a duty to inform them that they were not being represented because the circumstances would have led reasonable investors to believe otherwise. Texas courts have held that certain circumstances may give rise to a "duty to disclose." *Kotzur v. Kelly,* 791 S.W.2d 254, 258 (Tex.App.—Corpus Christi 1990, no writ) ("[A]n attorney may be held negligent when he fails to advise a party that he is not representing them on a case when the circumstances lead the party to believe that the attorney is representing them."); *Parker,* 772 S.W.2d at 157 ("This duty to so advise would arise if the factfinder determined that the attorneys were aware or should have been aware that their conduct would have led a reasonable person to believe that she was being represented by the attorneys."). After reviewing the record, we find that the evidence in this case is also insufficient as a matter of law to establish that Jones Day and/or Kneipper had a "duty to disclose." Moreover, even if such a duty did exist, we believe that the disclaimer in the opinion letter was sufficient to alert the investors to the fact that their interests were not being represented by Jones Day and/or Kneipper.

B

Kneipper and Jones Day appeal from the district court's denial of their motion for summary judgment, which asserted that the plaintiffs (except for MVenture) were estopped from asserting

24

any claims against defendants by a release contained in the plan of reorganization entered in FilmDallas's bankruptcy case. The investors argue that defendants waived the defense of res judicata by failing to plead it affirmatively as required by FED.R.CIV.P. 8(c). We agree.

Res judicata is an affirmative defense which is considered waived if not specifically pleaded in the answer or an amended answer permitted under FED.R.CIV.P. 15(a). *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 172 (5th Cir.1985); *Morgan Guaranty Trust Co. of New York v. Blum,* 649 F.2d 342, 344-45 (5th Cir.1981); *Henry v. First Nat'l Bank of Clarksdale,* 595 F.2d 291, 298 (5th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Concurrent with their motion for summary judgment, the defendants filed a motion for leave to amend their answer, which the district court also denied. A district court has some discretion "to allow late amendment to press a defense when no prejudice would result to the other party, and the ends of justice so require." *Mozingo,* 752 F.2d at 172. We review the district court's denial of such a motion for abuse of discretion. *Morgan Guaranty Trust Co. of New York,* 649 F.2d at 345.

As the investors point out, the defendants did not attempt to amend their answer until approximately ten months after the deadline to amend in the securities fraud case and almost three years after the bankruptcy plan was confirmed. Moreover, the bankruptcy release was not something the defendants could not have discovered and asserted earlier. *See Pope v. MCI*

25

*Telecommunications Corp.,* 937 F.2d 258 (5th Cir.1991) (affirming denial of leave to amend where claim could have been asserted years earlier), *cert. denied,* 504 U.S. 916, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992). Therefore, we conclude that the district court followed the law and did not abuse its discretion in denying defendants' motions.

VI

For the foregoing reasons, we AFFIRM the district court's rulings on the two motions for summary judgment; we REVERSE the judgment of the district court in favor of the defendants, and REMAND for a new trial on the federal and Texas state securities fraud claims and on the civil conspiracy claim.

BERRIGAN, District Judge, concurring in part and dissenting in part:

I join the majority in affirming the grant of summary judgment on the professional negligence claim and in affirming the denial of summary judgment on the estoppel issue. I also join the majority in finding that the jury was given an erroneous instruction regarding "materiality" as to the securities fraud claims, necessitating a new trial on these claims. I disagree with the majority in one respect. I think that the jury's verdict on the civil conspiracy claim should be upheld.

"If there is an evidentiary basis upon which the verdict can be supported, the jury's determinations will be left undisturbed, even where there is substantial contradictory evidence that could have supported an opposite verdict." *Gibraltar Savings v. LD Brinkman Corp.,* 860 F.2d 1275, 1297 (5th Cir.1988), *cert. denied,*

26

490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989). The record reflects that the *only* fraud claimed by the plaintiffs and subjected to proof at trial still supports the finding of civil conspiracy even though it occurred at a time which would have made it "immaterial" for purposes of the erroneous securities jury charge.

The majority acknowledges that the verdict on civil conspiracy derived from a jury instruction which has been widely approved. The jury cannot be misled by a charge which so accurately summarizes the prevailing jurisprudence. Because civil conspiracy is a distinct claim which does not require materiality, the jury was able to consider the "unlawful acts" which were the entire focus of the five-week trial. The necessary retrial of the securities claims should not mandate retrial of the civil conspiracy claim. With the civil conspiracy claim left undisturbed, the jury's *in pari delicto* finding would also be maintained.