THE FIRST NATIONAL BANK
IN DURANT, Plaintiff,

v.

LANE & DOUGLASS and Don
Lane, Defendants.

Civil Action No. 2:95–CV–287–C.

United States District Court,
N.D. Texas,
Amarillo Division.

Jan. 27, 1997.

Steven Lee Hoard, Mullin, Hoard & Brown, Amarillo, TX, for Plaintiff.

Robert Harold Smith, Smith & Stone, Amarillo, TX, for Defendants.

## ORDER

CUMMINGS, District Judge.

Plaintiff First National Bank in Durant (Bank) filed suit against Defendants. Prior to the start of trial Tim Epps (Epps) entered into an agreed judgment with the Bank; Trans Terra Corporation International (Trans Terra) and Malcolm Douglass filed for bankruptcy and were severed from the case. Therefore, only the partnership of Lane & Douglass and Don Lane remained as defendants. After a jury trial, a verdict was returned in favor of the Bank. The Bank has now filed a Motion for Judgment on the Verdict. The defendants have filed a Motion for Judgment as a Matter of Law, or in the alternative, a Motion for New Trial. After considering all relevant arguments and evidence, the Court **DENIES** the Bank's Motion, **DENIES** Defendants' Motion for New Trial, and **GRANTS** Defendants' Motion for Judgment as a Matter of Law.

The Bank filed a legal malpractice claim against Defendants for negligence and negligent misrepresentation. The genesis of this suit occurred when Malcolm Douglass sent an oil and gas opinion letter to the Bank which incorrectly revealed the ownership interest of Trans Terra. Trans Terra was seeking a 1.5 million dollar loan which was to be secured by its ownership interest and personally guaranteed by Epps. The letter stated that it was sent at Mr. Epps' request but contained language showing that the letter was solely for the Bank's benefit. The Bank relied upon this letter and consummated the loan transaction. Trans Terra and Epps later defaulted on the loan.

■ In Texas, a legal malpractice claim sounds in tort and is governed by negligence principles. *Barcelo v. Elliott*, 923 S.W.2d 575, 579 (Tex.1996). Such a claim cannot be initiated absent an attorney-client relationship. *Marshall v. Quinn–L Equities, Inc.*, 704 F.Supp. 1384, 1395 (N.D.Tex.1988) (negligence and negligent misrepresentation claims cannot be maintained without an attorney-client relationship). Traditionally, the attorney-client relationship is proved by the existence of privity of contract between the parties. *See Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 621 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Absent privity, courts have been unwilling to find the existence of an attorney-client relationship in most situations. Privity, however, may be implied from the conduct of the parties such that an "implied attorney-client relationship" is created. *See Kotzur v. Kelly*, 791 S.W.2d 254, 257 (Tex.App.—Corpus Christi 1990, no writ); *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 633 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *see also Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1199 (5th Cir.1995) (recognizing that Texas law may require a "duty to disclose" the absence of an attorney-client relationship in some situations) (hereinafter *Banc One*). "Although the attorney-client relationship can be implied, courts will not readily impute the contractual relationship absent a sufficient showing of intent." *Banc One*, 67 F.3d at 1198. More important, Texas law appears to be steadfastly moving away from fashioning new exceptions. *See Barcelo*, 923 S.W.2d 575.

With this background in mind, this Court must determine whether the evidence presented, as a matter of law, would allow a reasonable jury to find that the parties manifested an intent to create an attorney-client relationship, or whether an implied attorney-client relationship existed. *See* Fed.R.Civ.P. 50.

■ In order to determine whether an attorney-client relationship existed, either expressly or impliedly, between the Bank and Malcolm Douglass, this Court must look to traditional contract principles because privity means the contractual relationship that exists between the attorney and the client. *Thompson*, 859 S.W.2d at 621. One of the essential elements to the formation of a contract is the mutual assent of the parties to

the contract. *Sonne v. F.D.I.C.*, 881 S.W.2d 789, 791 (Tex.App.—Houston [14th Dist.] 1994, writ denied). The uncontroverted evidence at trial was that Malcolm Douglass did not enter into an express attorney-client agreement with the Bank; he never billed the Bank and always believed that he represented Epps. *Both* parties did not intend to create an express attorney-client relationship. Therefore, no reasonable jury could find that the parties manifested an intent to create an express attorney-client relationship as a matter of law. Therefore, this Court turns to whether an implied attorney-client relationship existed.

■ In asserting that an implied attorney-client relationship existed between the Bank and Malcolm Douglass, the Bank relies upon the title opinion dated November 22, 1993.[1] The Bank points to three pieces of evidence to show that an implied attorney-client relationship existed: first, the letter is addressed to the Bank; second, there is language in the title opinion which states that it is being written for the Bank's benefit; and third, the title opinion is bereft of a disclaimer similar to the one found in the *Banc One* case. Defendants counter by asserting that the title opinion contains a disclaimer, although not identical to the one contained in *Banc One*; the letter's language stating that it is for the Bank's benefit did not create an implied attorney-client relationship as a matter of law; and the letter being addressed to the Bank did not create an implied attorney-client relationship as a matter of law.

■ This Court finds that the evidence presented at trial was such that a reasonable jury could not have found that an implied attorney-client relationship existed as a matter of law because: (1) the opinion letter dated November 22, 1993 contained a disclaimer which placed or should have placed the Bank on notice that Malcolm Douglass was not its attorney; (2) to the extent that the language in the opinion letter dated November 22, 1993 does not provide the same notice as the one contained in *Banc One*, it is a quasi-disclaimer, and it was not objectively reasonable for the Bank, as a sophisticated

entity, to believe that Malcolm Douglass was its attorney; (3) the letter being addressed to the Bank did not create an implied attorney-client relationship because of language stating that it was being written at the request of Mr. Epps; and (4) an attorney's opinion letter cannot create an implied attorney-client relationship even when the attorney knows that the letter will be relied upon by, or be used for the benefit of, a third party.

Under Texas law the critical issue is whether Malcolm Douglass was aware, or should have been aware, that his conduct would have led a reasonable bank to believe that it was being represented by him. *See Banc One*, 67 F.3d at 1199. This explicitly involves a subjective and objective test of Malcolm Douglass' awareness. While most reported cases that involved the issue of an implied attorney-client relationship have been attorney-centric, this Court believes that the alleged client's sophistication should be considered as well. This bears heavily upon the reasonableness of the Bank's belief that Malcolm Douglass was its attorney. Therefore, like the attorney, the Bank is implicitly held to a subjective/objective test. Although the Bank may have subjectively believed that Malcolm Douglass was its attorney, the Bank was not objectively reasonable in this belief as a matter of law.

The November 22, 1993 letter begins by stating that it is being written at the request of Malcolm Douglass' client, Tim Epps. When Malcolm Douglass rendered the title opinion, the Bank knew five things: (1) Malcolm Douglass had done title work for Trans Terra and Epps in the past on the Ledrick leases; (2) Malcolm Douglass acted as Trans Terra and Epps' attorney when he researched the Ledrick leases prior to November 22, 1993; (3) the loan was to be secured by the interest Trans Terra owned in the Ledrick leases and personally guaranteed by Epps; (4) the amount of the loan was for $1,500,000.00; and (5) Malcolm Douglass was representing Trans Terra and Epps in some capacity, even if a limited one, in the loan transaction. Considering the size of the loan and the sophistication and knowledge of the Bank, it was not objectively reasonable, as a

---

1. Counsel for the Bank and counsel for the defendants stipulated that the issue of whether there was an attorney-client relationship was limited to the events surrounding the November 22, 1993 letter.

matter of law, for the Bank to believe Malcolm Douglass was its attorney. The Bank was placed on notice, or at least should have been, that Malcolm Douglass was representing Trans Terra and Epps regardless of any language in the letter stating that the title opinion was being written solely for the Bank's benefit. Additionally, this Court finds as a matter of law that Malcolm Douglass was not aware, nor should he have been aware, that a sophisticated entity such as the Bank, under these facts, would believe that it was his client.

The Bank argues that when Malcolm Douglass addressed the letter to the Bank and stated that it was for the Bank's benefit, an implied attorney-client relationship was created. The Bank further argues that any reliance upon the *Banc One* opinion to the contrary is inapposite to the facts of this case or *Banc One*'s holding. This Court disagrees. The Fifth Circuit has stated that an attorney-client relationship is not created simply because an opinion letter is addressed to the alleged client. *See Banc One*, 67 F.3d at 1199 n.21.

Although the Bank argues that the language stating that the title opinion is for the Bank's benefit creates an implied attorney-client relationship, this Court is unpersuaded and believes that the law is clearly to the contrary. In fact, several courts have held that an attorney owes no duty to a third party even when the attorney renders an opinion upon which he knows the third party will rely.[2] *F.D.I.C. v. Howse*, 802 F.Supp. 1554, 1563–64 (S.D.Tex.1992); *Marshall*, 704 F.Supp. at 1394–95; *Banc One*, 67 F.3d at 1198–99 (letter used phrase "for your benefit").

For the foregoing reasons the motion for judgment as a matter of law must be **GRANTED**. All other relief not expressly granted is **DENIED**.

**SO ORDERED.**

---

[2]. Although the opinion letter in the case *sub judice* uses the word benefit instead of rely, the Court believes that this is a difference without a distinction under the facts of this case. The Bank required the title opinion as a condition of the loan; the Bank was intending to rely upon the title opinion which, in turn, would be a benefit to the Bank.